UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:11-CV-44-F

| | |
|---|---|
| BEACH MART, INC., )<br>   Plaintiff )<br>)<br>v. )<br>)<br>L&L WINGS, INC., )<br>   Defendant. )<br>           )<br>)<br>L&L WINGS, INC., )<br>   Counterclaimant )<br>)<br>v. )<br>)<br>BEACH MART, INC., )<br>   Counter Defendant. )<br>           ) | <u>ORDER</u> |

  This litigation, now in its third year, is before the court on Beach Mart's motion to enjoin L&L from prosecuting a lawsuit in the Southern District of New York [DE-191] and L&L's motion to stay these proceedings pending resolution of the New York action [DE-198]. Regrettably, the court finds that yet another potentially lengthy delay is necessary in this case. The motion to enjoin [DE-191] is DENIED and the motion to stay [DE-198] is ALLOWED.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

  L&L purportedly owns the rights to the trademark "Wings," which L&L registered with the United States Patent and Trademark Office on July 1, 2008. L&L owns and operates a number of Wings stores in North Carolina and elsewhere, which offer beach accessory items and clothing. Beach Mart also owns a number of beach accessory stores, which it also operates under

the Wings name. Beach Mart's principal, Israel Golasa, was at one time an employee at L&L and a personal friend of L&L's principal, Shaul Levy. According to L&L, Levy negotiated a contract with Golasa to allow Beach Mart to use the "Wings" name at Beach Mart stores, in an effort to help Beach Mart's business get started.

However, the parties' relationship deteriorated. Under a revised 2005 contract, Beach Mart allegedly agreed to limit its use of the Wings mark to "Super Wings" or "Big Wings." When L&L became aware that Beach Mart continued to use the Wings mark by itself on various store signs and other places, L&L sent a letter purporting to terminate the 2005 agreement and ordering Beach Mart to cease using the Wings name altogether. Beach Mart promptly filed suit in September, 2011 for breach of the 2005 agreement and L&L counterclaimed for trademark infringement, breach of contract, and a variety of state law unfair competition claims.

After a lengthy initial discovery period, the parties filed cross motions for summary judgment in September, 2012. However, after the initial discovery period had closed, the court allowed Beach Mart to amend its complaint to add the affirmative defense of trademark abandonment. After the court allowed the amendment, Beach Mart promptly filed a motion requesting a supplemental discovery period to address its allegations of L&L's "naked licensing" of the trademark. The court allowed the supplementary discovery period, which necessitated another continuance of the trial until September 30, 2013. During this supplemental discovery period, which ended in August, 2013, Beach Mart uncovered the Morrow Agreement.

The Morrow Agreement, executed in 1993, is a licensing agreement between Shepard Morrow and L&L, in which Morrow purportedly licensed the use of the Wings mark to L&L. According to Beach Mart, the Morrow Agreement indicates that L&L never owned the Wings

2

mark and that L&L perpetrated a fraud on the USPTO when it registered the mark. After discovery of the Morrow license, Beach Mart decided that it needed to pursue a host of substantially different claims against L&L. Once the supplemental discovery period ended, Beach Mart promptly moved to continue the trial so the parties could brief the issue of whether Beach Mart should be allowed to bring essentially an entirely new case against L&L.

After another round of briefing and a hearing, the court ultimately allowed Beach Mart to bring its new claims on December 16, 2013. The court noted in its order allowing the amendment [DE-183] that L&L itself was largely responsible for the lateness of the proposed amendment because it knew about the Morrow Agreement and did not disclose it to Beach Mart in the course of the initial discovery period. In addition, because the parties expressed interest in further settlement negotiations at the hearing on the motion to amend, the court stayed all formal motions practice and ordered the parties to focus on settlement of this matter, which the court observed would result in significant conservation of resources moving forward.

Despite the stay of this case and the court's encouragement to focus on settlement, the parties apparently used the brief stay of motions practice to strengthen their litigation positions.[1] Beach Mart moved forward with the formation of Super Wings, an entity whose sole shareholder is Beach Mart's principal, Israel Golasa. After its formation, Super Wings immediately executed an agreement with Morrow in which Morrow assigned all of his right, title, and interest in the Wings trademark (whatever that may be) to Super Wings. Although Beach Mart disputes this,

---

[1] The court notes that it only stayed motions practice in this particular case and "encouraged" the parties to focus on settlement. The December 16, 2013 order did not specifically prohibit either party from engaging in the below actions, though they certainly were not within the spirit of the order or either party's representation that they were open to further settlement negotiations.

L&L maintains that this action was nothing more than an effort to defeat the joinder of Morrow as a necessary party in this litigation.² After Beach Mart disclosed to L&L the purported assignment from Morrow to Super Wings, L&L filed a new case in the Southern District of New York against Morrow and Super Wings (civil number 1:14-CV-00809-GBD) ("New York action"). In the New York action, L&L requests, among other things, a declaratory judgment that Morrow has no rights in the Wings name and that the 1993 Morrow Agreement terminated in 1994. In addition to the declaratory judgment claims, L&L brought alternative claims for breach of contract by Morrow and tortious interference with contract by Super Wings. Notably, L&L challenges the assignment between Morrow and Super Wings in the New York action, alleging that it is void because Morrow had no rights to assign, or alternatively because it failed to comply with the provisions of the 1993 agreement. L&L served the complaint and summons from the New York action on Israel Golasa minutes before the scheduled February 11, 2014 settlement conference before this court.

When motions practice reopened in this court, Beach Mart immediately filed a motion to enjoin L&L from prosecuting the New York action under the first-filed rule and other equitable considerations. The court ordered expedited briefing, and L&L filed its response and a motion to stay this litigation pending resolution of the New York action a week later. Both motions have

---

² At the hearing on the motion to amend, the court observed that Morrow would likely need to be joined as a necessary party in this case in the event Beach Mart's new claims were allowed. Because most of Beach Mart's claims are predicated on the validity of the 1993 agreement between Morrow and L&L, the court observed that Morrow's presence was likely necessary because resolution of Beach Mart's new claims required a finding regarding Morrow's rights in the trademark and his rights under the 1993 agreement.

been fully briefed. The court also allowed Beach Mart's request for oral argument on the motions, which was held on April 2, 2014.[3]

## DISCUSSION

**A. First-Filed Rule**

Beach Mart's primary arguments in support of its motion to enjoin relate to the "first-filed rule." The first-filed rule states that "where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action." *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974); *see also Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974) (noting the Fourth Circuit has adopted the Second Circuit's first-filed rule). The purpose of the rule is to avoid inconsistent judgments and foster judicial economy. *Horne & Hardart Co. v. Burger King Corp.*, 476 F. Supp. 1058, 1060 (S.D.N.Y. 1979). Although no bright-line rule exists, courts often consider the following factors when deciding if a second-filed action should be enjoined: (1) the chronology of the filings; (2) the similarities of the parties involved; and (3) the similarities of the issues raised. *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003); *Plating Res. Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999).

With respect to the similarity of parties factor, the parties in the two actions do not need to be identical. *See Byerson v. Equifax Info. Servs. LLC*, 467 F. Supp. 2d 627, 635-36 (E.D. Va. 2006); *Spotless Enters. Inc. v. The Accessory Corp.*, 415 F. Supp. 2d 203, 205-06 (E.D.N.Y.

---

[3] At the April 2, 2014 hearing, Beach Mart was represented by Charles Burke, Stephen Shaw, and David Harris; L&L was represented by Richard Taffet, Diane Hertz, and Donalt Eglinton. The parties did not present evidence at the hearing.

5

2006). However, the rule applies only in cases of concurrent jurisdiction. *See EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) ("[I]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." (internal quotation marks omitted)); *Buffalo Wild Wings, Inc. v. BWR McAllen, Inc.*, No. H-10-1265, 2010 WL 2640122, at *2 (S.D. Tex. June 30, 2010) (denying application of first-filed rule where some parties could not be joined in first action because first court lacked jurisdiction over those parties).

In this case, the court concludes that it cannot enjoin L&L from prosecuting the New York action because a number of outstanding questions remain regarding Morrow's joinder in the present action, not the least of which is whether Morrow is subject to personal jurisdiction in this court. As the court has already noted, Morrow's joinder in this action is likely essential because the court cannot adjudicate his rights in the Wings mark—a ruling that is essential to many of Beach Mart's new claims—without his presence. *See* Fed. R. Civ. P. 19(a) (providing for required joinder of some parties where "in that person's absence, the court cannot accord complete relief among existing parties"); *Teamsters Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 918 (4th Cir. 1999) (characterizing inquiry as "[w]ere the case to proceed, could a decree be crafted in a way that protects the interests of the missing party and that still provides adequate relief to a successful litigant"). Significantly, a party cannot be joined under Rule 19 if he is not subject to the jurisdiction of the court. *See Local 670 v. Int'l Union, United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 822 F.2d 613, 618 (6th Cir. 1987).

When the court addressed the issue of its personal jurisdiction over Morrow with the parties at the April 2, 2014 hearing, Beach Mart's counsel represented that Morrow may be subject to jurisdiction because he entered into the assignment agreement with Super Wings, a

6

North Carolina corporation.[4] But where a party's only contact with North Carolina is that he entered into a contract with a North Carolina corporation and the North Carolina corporation initiated the contractual relationship, personal jurisdiction is generally not available. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000) (holding personal jurisdiction was not available where plaintiff initiated contractual relationship). While it is unclear at the present time if Morrow initiated the contractual relationship with Super Wings, if this is Morrow's only contact with North Carolina (and it was the only one offered by counsel at the hearing), the court's jurisdiction over Morrow is an open question at best. The timing of Super Wings's formation, which occurred after the court allowed the amended complaint that asserts claims predicated on the validity of the Morrow Agreement, suggests that Super Wings approached Morrow about assigning his rights when it became clear that Morrow may need to be joined in the present litigation.

Beach Mart's position is that Morrow does not need to be joined in this case at the present time because he assigned all of his rights in the Wings trademark to Super Wings, which consents to joinder in the present lawsuit. But L&L is contesting the validity of the assignment between Morrow and Super Wings in the New York action on a variety of grounds. L&L has provided the court with authority suggesting that when an assignment is contested, the assignor is a necessary party in the litigation. *See Wing Indus. Inc. v. Korach*, 31 Fed. R. Serv. 2d 582 (S.D. Fla. 1981); *United States v. Barrett*, 315 F. Supp. 941, 945-47 (N.D. W. Va. 1970); 7 Charles

---

[4] The court also notes that it specifically directed the parties to address the court's jurisdiction over Morrow as part of their arguments on the motion to enjoin. March 26, 2014 Order [DE-208]. At the hearing, Beach Mart focused on its argument that Morrow does not need to be joined in light of the formation of Super Wings, an argument the court addresses below. Beach Mart offered only this single contact with North Carolina as a possible basis for the court's jurisdiction over Morrow.

7

Case 2:11-cv-00044-F   Document 211   Filed 04/07/14   Page 7 of 12

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1613 (4th ed. 2009). Thus, if L&L's claims in the New York action were brought in this court (as Beach Mart suggests they should be), Morrow would still need to be joined as a necessary party because L&L is contesting the validity of his assignment to Super Wings. As explained above, the court may not be able to join Morrow because he may not be subject to personal jurisdiction here.

Beach Mart also maintains that L&L's challenge to the validity of the assignment between Morrow and Super Wings in the New York action is frivolous. Of course, this court has no authority to decide whether a claim in the New York action is frivolous. For purposes of deciding the present motions, the court must presume that L&L would not have asserted a demonstrably frivolous claim in the New York action.

In contrast to this court's questionable jurisdiction over Morrow, the parties' briefing suggests that personal jurisdiction over Morrow in New York may be available.[5] *See, e.g.*, L&L's Reply Mem in Supp. of Mot. to Stay [DE-209] at 5 ("The New York Action seeks resolution, *inter alia*, of the parties' rights under the Morrow Agreement, which was entered into between two New York residents, negotiated, drafted and executed in New York and subject to New York law."). As L&L notes, it may be more efficient to have the New York court, where personal jurisdiction over Morrow may not be contested, decide the issue of Morrow's rights and stay this action pending resolution of that important issue.

Putting aside the issue of the court's jurisdiction over Morrow, the court was also relatively persuaded by L&L's argument that the two actions are not substantially similar because

---

[5] Of course, this court has no authority to determine this issue. The court notes it here because the assertion has not been disputed by the parties in the context of this case.

Beach Mart does not have standing to contest the validity of the Morrow Agreement. *See Nutrition & Fitness*, 264 F. Supp. 2d at 360 (explaining similarity of issues is also an important factor with respect to first-filed rule). Beach Mart's new claims in this case gave rise to a separate controversy between L&L and Morrow with respect to ownership of the Wings mark. Whatever affect the Morrow Agreement may have on Beach Mart's claims in this case, the fact remains that the validity of the Morrow Agreement must be resolved between L&L and Morrow, not Beach Mart and L&L. Beach Mart's inability to litigate the validity of the Morrow Agreement in this litigation (at least without Morrow's joinder) does distinguish the subject matter of this case from the New York action to some degree.

In summary, the court declines to enjoin L&L from prosecuting the New York action for two reasons. First (and primarily), Morrow likely needs to be joined in this action and the court's jurisdiction over Morrow is in doubt at the present time. While it is true that precise identity of parties is not required for application of the first-filed rule, uncertainty regarding the first-filed court's jurisdiction over the parties in the second-filed action counsels against application of the rule, especially in the context of the present case where the defendant in the second-filed action is a potential necessary party in the first-filed action. *See Univ. of Pennsylvania*, 850 F.2d at 971 (explaining first-filed rule applies in cases of concurrent jurisdiction); *Buffalo Wild Wings*, 2010 WL 2640122, at *2 (denying application of first-filed rule where parties could not be joined in first action because first court lacked jurisdiction over those parties). Second, the two cases are at least arguably distinct, as the New York action involves claims that Beach Mart does not have standing to pursue at the present time.

9

B. **Equitable Considerations**

Beach Mart also urges the court to enjoin L&L from prosecuting the New York action for equitable reasons. Beach Mart alleges the New York action constitutes "blatant forum shopping" that abuses the judicial process. Beach Mart's theory is that a number of rulings in this case have not been in L&L's favor in recent months and L&L filed the New York action in an effort to migrate the key issues in this case to a different court. *See Kidd v. Andrews*, 340 F. Supp. 2d 333, 336 (W.D.N.Y. 2004) ("When they see a storm brewing in the first court, they may try to weigh anchor and set sail for the hopefully more favorable waters of another district." (internal quotation marks omitted)).

While the court agrees that L&L's filing of the New York action potentially suggests forum shopping, the court declines to enjoin L&L in these particular circumstances. For one thing, the balance of equities in this case does not decidedly tip in Beach Mart's favor. Beach Mart is the party that made the Morrow license a key dispute in this case and requested a lengthy continuance of this matter while it pled entirely new claims that likely require Morrow's joinder. While it is true that L&L caused some of the delay by failing to disclose the Morrow Agreement earlier in the litigation, the court has been extremely accommodating to Beach Mart with respect to allowing them to essentially restart the entire case on the virtual eve of trial/summary judgment. In addition, because the court is concerned that it does not have jurisdiction over Morrow, and his joinder at the least will cause lengthy motions practice in this court, it may be more efficient to have his rights decided by a court that more likely has jurisdiction over the dispute between Morrow and L&L.

The court recognizes that Beach Mart has been waiting over two years for this case to be decided and that staying this action will potentially cause another lengthy delay. But much of that delay has been to accommodate Beach Mart's own requests for extensions. It is also significant that Beach Mart does not oppose staying this litigation in the event the court denies the motion to enjoin. As counsel for Beach Mart noted at the hearing, "the parties do not agree on much, but we do agree that both actions should not proceed at the same time." Although the court was unlikely to deny L&L's motion to stay in these circumstances anyway, Beach Mart's consent to a stay while the New York litigation proceeds also suggests that it will not be substantially prejudiced by another extension of this case.

## CONCLUSION

Beach Mart's motion to enjoin [DE-191] is DENIED. At the hearing on April 2, 2014, Beach Mart consented to staying this case pending resolution of the New York action in the event its motion to enjoin was denied. Accordingly, L&L's motion to stay [DE-198] is ALLOWED and this action is hereby STAYED pending resolution of the New York action (civil number 1:14-CV-00809-GBD). Consideration of all pending motions, including Beach Mart's motion for sanctions [DE-165], is also STAYED pending resolution of the New York action. Counsel is DIRECTED to notify the court when the New York action is concluded, at which time the court will lift the stay.

SO ORDERED.

This the 7th day of April, 2014.

                                                  *James C. Fox*
                                                 JAMES C. FOX
                                                 Senior United States District Judge