IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:11-CV-00044-F

| | |
|---|---|
| BEACH MART, INC.,<br>  Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| L&L WINGS, INC.,<br>  Defendant. | )<br>)<br>) |
| | )<br>) |
| L&L WINGS, INC.,<br>  Counterclaimant | )<br>)<br>) |
| v. | )  **ORDER**<br>) |
| BEACH MART, INC.,<br>  Counter Defendant. | )<br>)<br>) |
| L&L WINGS, INC.,<br>  Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| SHEPARD MORROW, SUPER WINGS, LLC,<br>and BEACH MART, INC.,<br>  Defendants. | )<br>)<br>) |

  This matter is before the court on Motions for Judgment on the Pleadings filed by Shepard Morrow [DE-223], Beach Mart, Inc. [DE-227], and Super Wings, LLC [DE-229]. The matters have been fully briefed and are ripe for ruling. For the reasons set forth herein, all three motions are ALLOWED.

I.  PROCEDURAL AND FACTUAL HISTORY

This case has a protracted and sordid history. In the beginning, when Beach Mart filed its Complaint [DE-1] on September 9, 2011, it appeared to be a fairly benign contract dispute. Now, however, it has turned malignant and acrimonious, and the claims and cross-claims and counterclaims have swelled to include, among other things, fraudulent inducement to contract, negligent misrepresentation, tortious interference with contract, and even civil conspiracy. The court will not review all of that history here, but only the segment that particularly relates to the present motions.

At the heart of the legal dispute is one thing: the use of the Wings trademark. Originally, Beach Mart had a licensing agreement with L&L Wings, Inc. ("L&L") to use the Wings mark in running retail stores along the southeastern coast of the United States. L&L sought to terminate that license and Beach Mart sued for breach of contract. As the dispute evolved and discovery commenced, Beach Mart sought information about any and all of L&L's licensing agreements with any other party that concerned the Wings trademark. L&L disclosed several agreements and discovery continued forward. However, at the Rule 30(b)(6) deposition of Shaul Levy, L&L's president and the man who had been entering into these licensing agreements over decades, Beach Mart began to unearth some surprising information.

The discoveries began when Levy named five parties with whom L&L had entered into agreements to use the Wings trademark: Tim Anglim, Raffi and Effi Benjamin, Eli Tabib, Brian Bates, and Zeev Tafel. First Levy Dep. [DE-166-10] at 279:9-281:15. However, regarding Anglim, Levy corrected himself, stating that Anglim never had a Wings licensing agreement, but

only a *Winds* licensing agreement. *Id.* at 284:12-19. As Beach Mart soon discovered, that statement was unequivocally false.

When Beach Mart later deposed Anglim, he stated that he had a *Wings* agreement in addition to the Winds agreement. *See* Anglim Dep. [DE-166-14] at 19:22-20:21. Even though Levy had specifically stated that Anglim never had a Wings licensing agreement, Anglim's copy of the agreement showed that Levy had signed the Anglim Wings agreement on February 1, 1993, two and a half years before he signed the Anglim Winds agreement. *See* 1993 Anglim Sublicense [DE-166-3]. Indeed, the Wings agreement ran up until the time Anglim and Levy signed the Winds agreement. Anglim Dep. [DE-166-14] at 21:20-22:16.

The most interesting aspect of the Anglim Wings agreement was not its existence, but that it was a *sub*licensing agreement. The agreement stated that L&L was only a sublicensor of the Wings trademark with Morrow being the actual owner. *See* 1993 Anglim Sublicense [DE-166-3]. Moreover, attached to the Anglim Wings sublicense was the original Morrow agreement granting L&L a license in the Wings trademark. *See id.* at 6-11. Up to that point, Beach Mart had acted on the assumption that L&L was the rightful owner of the Wings trademark: Beach Mart's claims and defenses were premised on this assumption, and its discovery, while casting a sufficiently wide net to catch the Morrow agreement, had been focused on discovering the extent of L&L's control over the Wings trademark.

The discovery of the Morrow agreement threw this case into some chaos. As a direct result of the discovery, the court sanctioned L&L for its discovery violations. *See* Order of October 3, 2014 [DE-233]. Morrow also entered into a Trademark Assignment Agreement [DE-226-2], wherein he assigned all of his rights in the Wings Trademark, whatever they might be,

3

including any right he had under his agreement with L&L and any causes of action he might have against L&L, to Super Wings. *See id.* at 1. Only a few months after Morrow entered into the assignment agreement, L&L filed suit (the "New York Action") in the Southern District of New York against Morrow and Super Wings (and later Beach Mart). *See* Compl. [DE-2], *L&L Wings, Inc. v. Morrow*, No. 1:14-CV-809-GBD (S.D.N.Y. Feb. 10, 2014). The suit in the Southern District of New York was an attempt to determine the validity and extent of the Morrow license and his subsequent assignment agreement with Super Wings, independent of the present litigation. Shortly after the New York Action began, Morrow rescinded his agreement with Super Wings and entered into an essentially identical assignment agreement with Beach Mart. *See* Rescission Agreement [DE-226-3]; Trademark Assignment Agreement [DE-225-2].

Ultimately, the New York Action was transferred to this district for consolidation with this case. In the transfer order, United States District Judge George B. Daniels wrote

> Defendants' motions to dismiss Plaintiff's amended complaint are DENIED. Defendants' motions to transfer this action to the Eastern District of North Carolina are GRANTED because:
>
> (1) Under the "first-filed rule," *Beach Mart Inc. v. L&L Wings, Inc.*, 11-CV-44-F (E.D.N.C.), takes priority;
>
> (2) This Court lacks personal jurisdiction over Defendants Beach Mart, Inc. and Super Wings, LLC;
>
> (3) Certain counts of the amended complaint constitute compulsory counterclaims that Plaintiff must assert in the pending Eastern District of North Carolina action; and
>
> (4) This Court finds transfer serves "the interest of justice." 28 U.S.C. § 1404(a).
>
> Defendants' motion to strike the amended complaint for misjoinder is therefore DENIED as moot. The Clerk of Court is instructed to close all open motions and this case.

4

*See* Order [DE-56] *L&L Wings, Inc. v. Morrow*, No. 1:14-CV-809-GBD (S.D.N.Y. Aug. 20, 2014). That was the extent of the Southern District's transfer order in the New York Action.

Of additional importance to the present motions are several covenants not to sue. Morrow has entered into a covenant not to sue L&L regarding the Wings mark. *See* Decl. [DE-222-7]. Morrow's covenant not to sue states that he has "retained and currently posses[es] no interest or rights in the [Wings] trademarks, the Trademark License Agreement, or any causes of action against L&L Wings, Inc. arising therefrom, nor . . . continue[s] to claim any such right." *Id.* ¶ 4. He goes on to covenant not to bring any suit against L&L "arising from or related to the WINGS trademarks, ownerships [sic] rights in any trademarks for WINGS, [or] the Trademark License Agreement" in the present or future. *Id.* ¶ 5. Super Wings has entered into a similar covenant. *See* Letter to Diane C. Hertz [DE-226-4] (Apr. 18, 2014). L&L does not dispute the validity or existence of these covenants not to sue.

The present motions for declaratory judgment are now before the court as part of L&L's Amended Complaint from the transferred New York Action. *See* Amended Complaint and Jury Demand [DE-213-2]. Morrow and Super Wings both argue that the declaratory judgment claims against them must be dismissed for lack of a case or controversy between them and L&L and lack of an injury-in-fact to L&L. Beach Mart argues that the declaratory judgment claims against it should be filed as compulsory counterclaims. L&L argues (1) that the law of the case bars these arguments, (2) that there is an actual case or controversy, and (3) that refiling its declaratory judgment claims against Beach Mart as compulsory counterclaims is moot because of the consolidation of the New York Action and the case already before this court.

## II. LEGAL STANDARD

Rule 12(c) states, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). With the exception that the court may consider the defendant's answer as well as the complaint, Rule 12(c) motions are typically analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Thus, a court must determine the legal sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In doing so, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'ground' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action' s elements will not do." *Twombly*, 550 U.S. at 555 (second alteration in original). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180. The court may consider "documents incorporated into the complaint by reference" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

6

## III. DISCUSSION

### A. The order transferring the New York Action to this court does not bar the present motions to dismiss.

L&L's primary argument against Morrow and Super Wings' motions is that the order transferring the New York Action to this court already disposed of Morrow and Super Wings' arguments and is the law of the case. *See* Pl. L&L's Opp. Mots. J. Pleadings [DE-237] at 7-8. L&L argues that Morrow and Super Wings are therefore improperly attempting to renew their motions to dismiss. *See id.* at 8-10. These arguments are patently absurd.

The order transferring the New York Action to this court denies the motions to dismiss in a single sentence before explaining why the action should be transferred to this court. *See* Order of August 20, 2014 [DE-56], *L&L Wings, Inc. v. Morrow*, No. 1:14-CV-809-GBD (S.D.N.Y. Aug. 20, 2014). The order does not provide a basis for denying the motions to dismiss other than the transfer, which is the purpose of the order. It does not address the substance of the motions to dismiss and does not establish any law of the case as it pertains to those motions. While the order "denies" the motions to dismiss, it is clear from the context of the order that the motions are moot because of the transfer. *See id.* L&L's argument to the contrary fails. The court will consider the motions for judgment on the pleadings as original motions, not renewed ones.

### B. There is no case or controversy between L&L and either Morrow or Super Wings.

The Declaratory Judgment Act allows courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. However, courts may only provide such declaratory relief in "a case of actual controversy." *See id.*; *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118,

126-27 (2007). A case or controversy exists where there is a definite and concrete dispute, "touching the legal relations of parties having adverse legal interests." *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). The dispute must be substantial and real, allowing for the courts to provide specific and actual relief, as opposed to issuing an advisory opinion on hypothetical facts. *See id.* Absent an actual case or controversy, courts may not exercise their judicial powers. *See* U.S. Const. art. III § 2, cl. 1; *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Furthermore, the case or controversy must continue throughout the entirety of the litigation, not merely exist when the complaint is first filed. *See Preiser*, 422 U.S. at 401-02.

Here, a controversy does not exist between L&L and Morrow as it pertains to an interest in the Wings trademark. While Morrow used to claim an ownership interest in the Wings mark, an interest sufficient enough that L&L appears to have previously entered into a licensing agreement with Morrow to use the Wings mark, Morrow has since disclaimed all such interest. He has further covenanted not to sue L&L in any way regarding the Wings mark. Indeed, in all the time he purportedly had an interest in the Wings trademark, including the agreement with L&L, he did not bring nor threaten to bring any claims against L&L. While Morrow may have previously laid claim to the Wings trademark, he certainly does not now, and has promised that he will never do so as it pertains to L&L. To put it otherwise, Morrow no longer cares about whether the Morrow agreement was void from the beginning or whether it terminated in 1994.[1] There is no continuing case or controversy. The questions of whether the Morrow agreement was valid, when it ended, and who owns the Wings trademark now do not concern Morrow other than

---

[1] The court notes that these are seemingly contradictory positions—if the agreement was void, it never could have terminated; if it terminated in 1994, then it must not have been void from its inception.

as a witness. Morrow's Motion for Judgment on the Pleadings [DE-223] is ALLOWED. Claims One, Two, and Five are DISMISSED as to Morrow.

Similar logic applies to L&L's declaratory judgment claims against Super Wings. Morrow rescinded his assignment agreement with Super Wings as it pertained to the Wings mark. Whatever the original assignment agreement might have conveyed, Super Wings ultimately received nothing from Morrow because of the rescission. Furthermore, Super Wings entered into a covenant not to sue L&L in any way regarding the Wings mark. Given the absence of a case or controversy between Super Wings and L&L regarding ownership of the Wings mark, Super Wings's Motion for Judgment on the Pleadings [DE-229] is also ALLOWED.[2] Claims Three and Five are DISMISSED as to Super Wings.

### C. L&L's declaratory judgment claims against Beach Mart must be refiled as compulsory counterclaims.

Under Rule 13 of the Federal Rules of Civil Procedure, a party must plead as a counterclaim, any claim that "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Failure to assert a compulsory counterclaim in an initial action precludes asserting that claim in a later action. *See Mesker Bros. Iron Co. v. Donata Corp.*, 401 F.2d 275, 278-79 (4th Cir. 1968).

Beach Mart argues that Claims Four and Five of L&L's complaint in the New York Action should be brought as compulsory counterclaims in the original action. L&L does not dispute this, but instead argues that the issue is moot due to consolidation of the actions. Indeed,

---

[2] Because the court concludes that there is no case or controversy between L&L and both Morrow and Super Wings, the court does not reach the question of whether there is any injury-in-fact.

L&L cites the court's own consolidation order wherein the court based its decision to consolidate, *inter alia*, on the court's interest in judicial efficiency and in managing its cases. *See* Order of September 15, 2014 [DE-220] at 3.

The court is aware of its interest in judicial efficiency, but L&L has played fast and loose with this case for too long. Claims Four and Five should have originally been brought as counterclaims against Beach Mart in the action originally filed before this court, not later filed in the separate New York Action. L&L cannot now save itself by claiming the issue is moot. Beach Mart's Motion for Judgment on the Pleadings [DE-227] is ALLOWED. Claims Four and Five as to Beach Mart are DISMISSED WITHOUT PREJUDICE to refile as counterclaims.

## IV. CONCLUSION

For the foregoing reasons, the Motions for Judgment on the Pleadings [DE-223, -227, -229] are ALLOWED. Claims One, Two, and Five are DISMISSED as to Morrow. Claims Three and Five are DISMISSED as to Super Wings. Claims Four and Five as to Beach Mart are DISMISSED WITHOUT PREJUDICE to refile as counterclaims.

SO ORDERED.

This, the 17 day of November, 2015.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge