IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:11-CV-00044-F

| | |
|---|---|
| BEACH MART, INC., <br>     Plaintiff <br><br> v. <br><br> L&L WINGS, INC., <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| L&L WINGS, INC., <br>     Counterclaimant <br><br> v. <br><br> BEACH MART, INC., <br>     Counter Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    **ORDER** <br> ) <br> ) |
| L&L WINGS, INC., <br>     Plaintiff <br><br> v. <br><br> SHEPARD MORROW, SUPER WINGS, LLC, <br> and BEACH MART, INC., <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

This matter is before the court on Beach Mart's Motion to Strike Untimely Supplemental Expert Report and to Exclude Belatedly-Produced Hearsay Evidence [DE-286]. The matter has been fully briefed and is ripe for ruling. For the reasons stated herein, the motion is ALLOWED.

## I.   PROCEDURAL AND FACTUAL HISTORY

The court will not revisit the case's entire history given its extensive treatment in past orders. Instead, the court highlights the procedural history and facts relevant to the present

motion. The court previously divided this case into two phases. Beach Mart's motion deals with a document disclosed from the first phase of this matter. The first phase concerns what have been dubbed the Morrow Issues. *See* Scheduling Order of October 31, 2014 [DE-241] at 1-2. The Morrow Issues are

> (1) the duration of Morrow's right, title, and interest in the Wings trademark, if any—particularly as to (a) when Morrow first acquired that right, title, and interest; and (b) when, if ever, that right, title, and interest ended; and
> (2) the extent of Morrow's right, title, and interest in the Wings trademark, if any—in particular, the extent of that right, title, and interest (a) when Morrow first acquired his right, title, and interest; (b) during the time period lasting from when Morrow entered any agreement with L&L Wings concerning the Wings trademark until the end of that agreement; and (c) when Morrow transferred any remaining right, title, and interest he possessed in the Wings trademark to Super wings.

*Id.* According to the court's scheduling order, fact discovery on the Morrow Issues was to open on November 3, 2014, and close on February 6, 2015. *See id.* at 2. Expert disclosures were due on February 20, 2015, with rebuttals to follow on March 13, 2015. *See id.* Expert discovery was to close entirely on April 17, 2015. *Id.*

On March 12, 2015, one of L&L's attorneys discovered an article (hereinafter the "Article") from the March 24, 1978 issue of *Men's Wear*, which Article contained information potentially relevant to the Morrow Issues. *See* Ladd Decl. [DE-296-1] ¶ 5. The next day, the attorney retrieved and made a copy of the Article. *See id.* ¶¶ 7-8. Just under a month later, on April 7, 2015, L&L showed the Article to its opinion witness,[1] John Kennard. *See* Supplement to Opinion Witness Report of John V.O. Kennard [DE-287-1] (hereinafter the "Supplemental Report"). On that same day, about a week and a half before the close of expert discovery and two days before Kennard's deposition, L&L sent Beach Mart a supplemental opinion witness report.

---

[1] Opinion witness is another term used to describe an expert witness.

2

The Supplemental Report is only two paragraphs and states that John Kennard relied on the Article in reaching his opinion that "Morrow's rights in the WINGS trademark, if any, were *de minimis*, as the [attached] article evidences non-use of the WINGS mark." *See id.* at 3. The Article, which makes up the remaining three pages of the Supplemental Report, appears to be an interview with Martin Morrow, the former Chief Executive Officer of Piedmont Industries. *See id.* at 6. Piedmont Industries had previously registered the Wings trademark with the United States Patent and Trademark Office. The Article contains an unattributed statement that "[t]he Wings name is still registered but not used currently." *See id.*

Beach Mart argues that the Article is inadmissible either (1) because it is untimely, or (2) because it is hearsay. L&L argues that the Article should be admitted (1) because it was filed before the end of discovery and any delay was justified or harmless; and (2) because any hearsay falls under either the ancient documents exception or the residual hearsay exception.

## II. LEGAL STANDARDS

### A. Timeliness and Supplementation Requirements Under Federal Rules 26 and 37

Rule 26(e) of the Federal Rules of Civil Procedure requires that parties timely supplement and correct their discovery disclosures. *See* Fed. R. Civ. P. 26(e). As it pertains to expert or opinion witness reports, "a party has a duty to supplement a materially incomplete or incorrect report or deposition testimony by the time pretrial disclosures are due under Rule 26(a)(3)." *See AMEC Env't & Infrastructure, Inc. v. Structural Assocs., Inc.*, No. 7:13-CV-21-BO, 2015 WL 1000766, at *2 (E.D.N.C. Mar. 5, 2015); *see also* Fed. R. Civ. P. 26(e)(2). If a party fails to supplement its disclosures, Rule 37(c)(1) provides courts with various sanction powers to remedy the violation, unless the violation was substantially justified or harmless. *See*

3

Fed. R. Civ. P. 37(c)(1). Courts have broad discretion to determine whether a Rule 26(e) violation was justified or harmless and to determine a remedy for that violation. *See Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *2 (E.D.N.C. May 7, 2012). In exercising this discretion, courts look to the following factors:

> (1) the surprise to the party against whom the evidence would be offered;
> (2) the ability of that party to cure the surprise;
> (3) the extent to which allowing the evidence would disrupt the trial;
> (4) the importance of the evidence; and
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* (quoting *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)).

## B. Hearsay, the Ancient Documents Exception, and the Residual Exception

Hearsay—an out of court statement offered to prove the truth of the matter asserted—is not admissible unless it falls under an exception. *See* Fed. R. Evid. 801(c), 802. Ancient documents provide one such exception for hearsay contained in documents that are at least twenty years old "and whose authenticity is established." Fed. R. Evid. 803(16). Documents and statements sometimes contain multiple layers of hearsay, in which case, each layer must fall under an exception in order to be admissible. *See* Fed. R. Evid. 805.

The rules also contain a residual hearsay exception, which creates a general exception for hearsay that otherwise does not have an exception in the rules. Fed. R. Evid. 807(a). Such hearsay must meets four conditions to qualify:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

4

*Id.* A hearsay statement will only be admissible under the residual exception if the proponent gives "reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it." Fed. R. Evid. 807(b). This exception should be used very rarely. *See Bouygues Telecom, S.A. v. Tekelec*, 473 F. Supp. 2d 692, 696 (E.D.N.C. 2007). Additionally, "the proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force . . . ." *See United States v. Washington*, 106 F.3d 983, 1001-02 (D.C. Cir. 1997). At least one court has held that "newspaper articles rarely satisfy the requirements of the residual-hearsay exception." *Planned Parenthood Se., Inc. v. Strange*, 33 F. Supp. 3d 1381, 1385 (M.D. Ala. 2014).

## III. DISCUSSION

### A. The Article will be struck because it is untimely without a justifiable explanation.

Fact discovery closed on February 6, 2015. *See* Scheduling Order [DE-241] at 2. Expert disclosures were due on February 20, 2015, with rebuttals to follow on March 13, 2015. *See id.* On March 23, 2015, ten days after rebuttals were due, L&L's attorneys found a copy of the Article, the existence of which they discovered only one day before. *See* Ladd Decl. [DE-296-1] ¶¶ 5, 7-8. L&L showed the Article to its opinion witness, Mr. John Kennard, almost a month later, and just two days before his deposition. *See* Kennard Dep. [DE-287-2] at 220:23-221:1.

L&L admits that it did not conduct the search leading to the Article until March 12, 2015, more than a month after fact discovery closed. *See* Ladd Decl. [DE-296-1] ¶ 5. Additionally, L&L gives no explanation for why it did not conduct the search earlier. On the other hand, despite its objections to the Article, Beach Mart acknowledges that there is no surprise here.

5

Furthermore, there is no disruption to trial. However, the court cannot find that the Article's late arrival is substantially justified or harmless.

"Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship . . . ." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008). Here, as in *Gallagher*, L&L was not supplementing to correct an inadvertent error or omission, nor do they claim to do so. Instead, L&L was using the Supplemental Report to shoehorn in a piece of evidence that L&L's counsel sought out after fact discovery had already closed. While L&L may not have engaged in gamesmanship by trying to spring surprising new information on Beach Mart, L&L offers no explanation for the late disclosure of the Article other than that it was discovered late. This seemingly innocent tautology does not justify the Article's tardiness. Indeed, as shown in Kennard's deposition, he had no idea why the document was not provided to him until April 7. *See* Kennard Dep. [DE-287-2] at 220:23-221:25. As in *Gallagher*, L&L "seeks to contort this sensible rule into the unacceptable rule that a party may permissibly submit a new expert report until pretrial disclosures are due or until 30 days before trial so long as the party characterizes the new report as a supplementation." 568 F. Supp. 2d at 631. To otherwise admit the Article "would promote gamesmanship and delay." *Id.* (citing Fed. R. Civ. P. 1; *Tucker v. Ohtsu Tire & Rubber Co.,* 49 F. Supp. 2d 456, 460 (D. Md. 1999)). On this basis, Beach Mart's Motion to Strike Untimely Supplemental Expert Report and to Exclude Belatedly-Produced Hearsay Evidence [DE-286] is ALLOWED. The Supplemental Report [DE-287-1] is hereby stricken along with the attached Article.

6

### B. The Article must be struck as it also contains inadmissible hearsay.

In addition to its timeliness arguments, Beach Mart argues that the Article should be excluded as hearsay. Though conceding that the Article is an ancient document under Federal Rule of Evidence 803(16), Beach Mart contends that the Article contains multiple levels of hearsay and that the secondary layers of hearsay do not fall under a hearsay exception. Specifically, Beach Mart argues that the statement, "The Wings name is still registered but not used currently," (hereinafter the "Statement") is not attributed to the Article's author—whoever the author might be—and is thus at least double if not triple hearsay. L&L counters by arguing that there is no double hearsay and, even if there is double hearsay, that the double hearsay restrictions "do[] not arise in the context of a newspaper or periodical unless the declarant is someone other than the article's author." L&L's Mem. Law Opp. [DE-296] at 9. L&L argues that the Statement's declarant was the author of the Article. *See id.* Alternatively, L&L argues that the Statement is admissible under the residual hearsay exception.

### i. Double Hearsay

Courts differ on whether a separate hearsay exception is necessary for each instance of double or triple hearsay when those instances are contained in an ancient document. In L&L's corner is a lone case from the Eastern District of Pennsylvania. *See Langbord v. U.S. Dep't of Treasury*, No. 06-5315, 2011 WL 2623315 (E.D. Pa. July 5, 2011). The *Langbord* court rejected the argument that a second level of hearsay in an ancient document had to fall within a separate hearsay exception. *See id.* at *17. In support of its holding—that an ancient document need only be authenticated for any hearsay therein to be admissible—the *Langbord* court cited to Professor Michael H. Graham's supplement in *Wright & Miller's Federal Practice and Procedure*, which

7

stated that a contradictory case, *Hicks v. Charles Pfizer & Co. Inc.*, 466 F. Supp. 2d 799 (E.D. Tex. 2005), was wrong:

> The text, underlying purpose, and rationale of Rule 803(16) each supports a broad interpretation. Rule 80[3](16) simply says, "statements in a document," not "statements in a document made on personal knowledge of the documents creator." Thus, a newspaper article over twenty years old reporting any event is admissible even if the article states that information was received from third parties, *i.e.,* the context of the article is not solely within the personal knowledge of the creator or creators of the document. Realistically, any requirement that the proponent of the ancient document must establish the personal knowledge of the creator of the document as to all matters contained therein would effectively emasculate Rule 803(16)'s utility as it did in *Hicks. Hicks* is thus incorrect both as a textual matter and a matter of policy and should not be followed.

*Id.* (quoting 30C Kenneth W. Graham, Jr. & Michael H. Graham, *Federal Practice and Procedure Evidence* § 7057 (2014 ed.)). However, *Langbord* seems to be the lone fighter in L&L's corner.

In Beach Mart's corner is a mob of cases holding that instances of double or triple hearsay in ancient documents must still fall under a hearsay exception for each instance of hearsay. *See United States v. Demjanjuk*, 367 F.3d 623, 631 (6th Cir. 2004); *United States v. Hajda*, 135 F.3d 439, 443-44 (7th Cir. 1998); *Emhart Indus., Inc. v. Home Ins. Co.*, 515 F. Supp. 2d 228, 268 (D.R.I. 2007); *Ruth v. A.O. Smith Corp.*, 615 F. Supp. 2d 648, 651 n.2 (N.D. Ohio 2005); *see also Escalante v. Clinton*, 386 F. App'x 493, 498-99 (5th Cir. 2010) (finding that translated statements did not qualify as hearsay within hearsay, but conducting the analysis when it applied to an ancient document); *Kesey, LLC v. Francis*, No. CV. 06-540-AC, 2009 WL 909530, at *28-29 (D. Or. Apr. 3, 2009) (holding that statements not attributed to author of ancient document article, that were offered for the truth of the matter asserted, and that did not fall into a hearsay exception were inadmissible).

8

The requirement that a separate hearsay exception apply to each layer of hearsay is logical. As outlined in another unpublished case from the Eastern District of Pennsylvania, one that held the opposite of *Langbord*, ancient documents are excepted from the rule against hearsay because they typically "bear certain indicia of trustworthiness that favor admissibility." *See United States v. Stelmokas*, Civ. A. No. 92-3440, 1995 WL 464264, at *5 (E.D. Pa. Aug. 2, 1995).[2] However, merely because ancient documents bear certain indicia of trustworthiness does not mean additional layers will bear the same indicia. In contrast to *Langbord*, the *Stelmokas* court held that the multiple hearsay requirement of Rule 805 must still apply to ancient documents. *See id.* at *6. The *Stelmokas* court held so (1) because Federal Rule of Evidence 805 would otherwise "be rendered superfluous," and (2) because "there is no guarantee that a hearsay statement contained in the document is accurate." *Id.*[3] The Fourth Circuit does not appear to have taken a position on whether multiple layers of hearsay in an ancient document must each fall under a hearsay exception. However, this court finds the logic of the aforementioned cases to be persuasive. Therefore, the court holds that any instances of double or triple hearsay within the Article must fall within a hearsay exception.

Unfortunately, merely applying the logic of *Stelmokas* and the weight of the case history does not end the dispute. L&L argues that the Statement is not a second level of hearsay because the declarant is the author of the Article. However, as Beach Mart notes, attribution of the Article, and the Statement in particular, is not so simple. The Article is labeled as "From the

---

[2] Those indicia include (1) age, meaning that the document was drafted before any of the events leading to litigation arose, thus precluding a litigious motive in the document's creation; (2) a writing, minimizing the danger of diluting or changing the information as it is communicated through time; and (3) temporal accuracy, meaning that information written at the time of the event is more likely to be accurate than the declarant's memory. *Id.*

[3] While *Stelmokas* precedes *Hicks*, the court finds its logic more compelling.

9

Publisher," and appears to be based off an interview with Martin Morrow of Piedmont Industries. *See* Article [DE-287-1] at 6. The Article does not indicate whether the publisher himself conducted the interview with Mr. Morrow or whether a staffer at *Men's Wear* did so. Indeed, the Article does not list an author. However, regardless of who conducted the interview, more problematic is attribution of the Statement. It is unclear whether the Statement was made by the interviewer or interviewee. Given (1) the interview nature of the Article, (2) the lack of attribution, and (3) additional trustworthiness concerns—discussed below with respect to the residual hearsay exception—the court finds that the Statement is not attributable to the Article's declarant. Therefore, the Statement is double hearsay and must fall under a separate exception. The only exception that would apply, as argued by L&L, is the residual hearsay exception.

### ii.     Residual Hearsay Exception

L&L makes four arguments in support of admitting the Statement under the residual hearsay exception, specifically as those arguments pertains to the trustworthiness prong of the exception: (1) "the statement was made before any motive to fabricate could arise;" (2) Piedmont and Martin Morrow had an incentive to correct any inaccuracy because the statement could be construed as against their interests; (3) the question of whether Piedmont was using the Wings mark is binary; and (4) the Article was contemporaneous with Piedmont's alleged non-use of the Wings mark. *See* L&L's Mem. Law Opp. [DE-296] at 10-11. These are also the factors listed in Hicks, with one critical omission: independent corroboration from other newspapers all stating the same information. *See Hicks*, 466 F. Supp. 2d at 809.

With the exception of the first factor, which otherwise duplicates the work that would be done by the ancient documents exception, there are several flaws in L&L's reasoning. To help

10

illustrate these flaws, the court compares the trustworthiness of the Statement and Article to the documents admitted in *Hicks* under the residual exception. The documents at issue in *Hicks* were four newspaper articles linking Pfizer, the defendant drug company, to doses of a vaccine that allegedly led to the plaintiff's brain tumors. *See id.* at 804.

### a. Incentive to Correct

In *Hicks*, the court found that the defendant drug company had incentive to correct any inaccuracies in the newspaper articles as the vaccine project "was a high-profile, public health campaign designed to eradicate a devastating illness." *Id.* at 808. Additionally, "the relevant statements were printed in newspapers of general circulation, so it is unlikely that inaccuracies would have gone unnoticed in the community." *Id.* at 809.

Here, the Statement is not part of a high-profile national campaign, nor something necessarily critical to the business's activities at that time. Indeed, the Statement is not even ancillary to the Article's discussion, which concerns the growth of men's clothing sales. *See* Article [287-1] at 6. Moreover, in contrast to *Hicks*, there is no evidence that *Men's Wear* was a widely-circulated magazine, much less a newspaper of general circulation. Because of these factors, the incentive to correct is much smaller here than it was in *Hicks*.

### b. Binary Event

In *Hicks*, the event in question was a binary event. *See Hicks*, 466 F. Supp. 2d at 809. That is, it either happened or it did not. The binary event—the administration of a vaccine—was concrete and discrete. It was concrete in that receiving the vaccine was physically observable, and discrete in that it occurred within a relatively small window of time. Those attributes should be important in determining whether an event was binary or not.

11

Here, in contrast to *Hicks*, abandonment of a mark is an abstract inquiry. Whether a mark has been abandoned depends on the mark holder's intent to use the mark in the future. *See George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009). Intent is not physically observable. The inability to observe intent weighs strongly against finding that this was a binary event. Instead of merely relying on regular abandonment, L&L looks to the presumption of abandonment, which does not require intent but only three years of non-use. *See id.* at 400-01. But three years of non-use is not comparable to the single administration of a vaccine. Three years of non-use is longer in time by several orders of magnitude than the *Hicks* event, which spanned a single instance on a single day. Because of this, accurate observation of three years of non-use requires more exhaustive and extensive observation than the provision and administration of a vaccine, which is readily observable.

L&L's attempt to use the Statement in the Article as a basis for claiming three years of non-use teeters between tenuous and illusory. The statement should, at very least, be commensurate in scope to the "binary" event. This single Statement, however, falls far short. Binary, as discussed above, implies a simple yes or no answer based on a discrete and concrete observation. Three years of non-use requires much more and thus can hardly be called binary.

### c. Contemporaneity

In *Hicks*, the newspaper articles were written contemporaneous to the administration of the vaccines, a discrete event. Here, L&L attempts to give the impression of the same contemporaneity but stretches the meaning of the word to its limits. L&L claims that the Article was contemporaneous to Piedmont's three-year non-use of the Wings mark, which then creates a presumption of abandonment. This comparison is akin to saying that a birthday is

12

contemporaneous to the year in which it occurs. Because, as discussed above, the three-year period of non-use is not a relatively discrete event, it is difficult to imagine a statement that would be proportionately contemporaneous with the requisite three years. Indeed, the court would expect to see either (1) a handful of separate publications citing non-use, including instances near the beginning and end of the alleged non-use; or (2) a more extensive publication documenting the three or more years of non-use. The lone Statement hardly approaches this.

### d. Independent Corroboration

The factor omitted by L&L, and perhaps the most important factor given the foregoing discussion, is independent corroboration. In *Hicks* there were four newspaper articles written by at least two different authors in two separate newspapers that all identified the manufacturer of the vaccine in connection with the administration of the vaccine at issue.

Here, there is absolutely no independent corroboration. The Article, indeed the Statement, is the only documentation stating that Piedmont had ceased using the Wings mark, and the Article does not indicate three years of non-use as asserted by L&L. Indeed, the lack of corroboration is mirrored in the Article itself, which contains only the solitary Statement of non-use on which L&L relies.

Given the foregoing discussion, the court finds that the Statement lacks the particularized guarantees of trustworthiness required for admission under the residual hearsay exception. Therefore, the Statement is not admissible. The court forgoes discussion of the other residual exception requirements save to note that the court's trustworthiness concerns also highlight the diminished probative force of the Article. On these grounds, Beach Mart's Motion to Strike

Untimely Supplemental Expert Report and to Exclude Belatedly-Produced Hearsay Evidence [DE-286] is ALLOWED.

## IV. CONCLUSION

For the foregoing reasons, Beach Mart's Motion to Strike Untimely Supplemental Expert Report and to Exclude Belatedly-Produced Hearsay Evidence [DE-286] is ALLOWED. L&L's Supplemental Expert Report and its accompanying exhibit [DE-287-1] are struck and are not admissible.

SO ORDERED.

This, the 26 day of January, 2016.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge