IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
(Consolidated Action)

| | | |
|---|---|---|
| BEACH MART, INC., | ) | |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| L&L WINGS, INC., | ) ) ) | |
| Defendant | ) | |
| L&L WINGS, INC., | ) ) | No. 2:11-CV-44-BO |
| Counterclaimant, | ) ) ) | |
| v. | ) ) | |
| BEACH MART, INC., | ) ) ) | |
| Counter Defendant | ) | |
| L&L WINGS, INC., | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:14-CV-52-BO |
| SHEPARD MORROW, SUPER WINGS, LLC, and BEACH MART, INC. | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This cause comes before the Court for consideration of defendant Shepard Morrow's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The

appropriate responses and replies have been filed and the matter is ripe for ruling. For the reasons that follow, Morrow's motion for summary judgment is GRANTED.

BACKGROUND

The Court has recounted the procedural history and factual background of this web of litigation involving the rights to the WINGS trademark in numerous previous orders. [DE 183; 211; 220; 233; 301 – 303]. The relevant facts for consideration of the instant motion are as follows. In May 1992, Morrow acquired five federal trademark registrations for the name WINGS. [DE 328-4] Morrow Decl. ¶¶ 4-6. In April 1993, Morrow and L&L Wings entered into an agreement regarding a license to use the WINGS mark (the Morrow Agreement), naming Morrow as the licensor and L&L Wings as the licensee. [DE 342-2]. Under the terms of the Morrow Agreement, L&L Wings agreed to pay Morrow a royalty totaling $100,000 payable in ten equal annual installments, together with interest on the unpaid balance at the rate of 10% per year. *Id.* § 2. The royalties provision further states that if the Morrow Agreement has not been terminated within ten years from its execution pursuant to section eight and the WINGS mark has not been assigned to L&L Wings pursuant to section nine, then the license granted would become royalty free and L&L Wings would have no further obligation to make royalty payments; section eight provides that the licensor may terminate the agreement at any time for failure to make a royalty payment and section nine relates to the licensee's sublicensing of the mark under certain conditions and states that the duties of the licensor are freely assignable upon written notice to the licensee. *Id.* §§ 2, 8, 9.

The Morrow Agreement further provides in section seven that if the licensor is not using the mark ten years after the date of the agreement and the licensee is the sole user of the mark, the licensee shall assign to licensee all right, title, and interest in the mark upon full payment and in consideration of the royalty. *Id.* § 7.

2

L&L Wings made the initial royalty payment of $10,000 and failed to make any payments thereafter. On December 31, 2013, Morrow assigned to Super Wings his right, title, and interest in the Morrow Agreement. [DE 342-3]. Such assignment was later rescinded, and Morrow assigned his right, title, and interest in the Morrow Agreement to Beach Mart. [DE 342-4; 342-5]. On April 18, 2014, Morrow notified L&L Wings that Morrow would assign all of his rights and duties under the Morrow Agreement to Beach Mart. [DE 305] Second Amd. Compl. ¶ 39.

The only claims which remain against Morrow in L&L Wings' action are counts I and II of the second amended complaint, which allege claims for breach of contract and breach of the implied covenant of good faith and fair dealing. [DE 305]. The parties do not dispute that the Morrow Agreement is to be construed under New York law.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it

3

might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

I.      Breach of contract.

L&L Wings alleges that Morrow breached the Morrow Agreement, to the extent there was a valid agreement, by failing to assign all right, title and, interest to the WINGS trademark to L&L Wings, and by entering into agreements assigning his rights under the Morrow Agreement first to Super Wings and then to Beach Mart without giving L&L Wings written notice of these assignments. [DE 305] Second Amd. Compl. (SAC) ¶¶ 56, 55. In order to establish breach of contract under New York law, "a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

L&L Wings takes the position in this litigation that "the Morrow Agreement was null and void from its inception, or else terminated in accordance with its terms." [DE 305] SAC ¶ 2. L&L Wings further alleges that if "the Morrow Agreement is valid and existing, Morrow has breached his obligations thereunder," by failing to assign all right title and interest in the WINGS mark to L&L as required by paragraph seven of the agreement. *Id.* ¶ 2, 54.

First, to the extent that L&L Wings contends that the Morrow Agreement is null and void from inception, it cannot state a claim for breach of contract. Second, insofar as L&L Wings contends that Morrow violated the terms of section seven of the Morrow Agreement, the plain

language of paragraph seven conditions assignment of the trademark from the licensor to the licensee on, *inter alia*, "full payment of and in consideration of the Royalty." [DE 281-35] § 7. There is no dispute in the record that L&L Wings failed to make any royalty or interest payment after the first payment of $10,000. *See* [DE 328-4] Levy, A. (30(b)(6)) Dep. at 96. Specifically, L&L Wings testified that it failed to pay Morrow any of the royalties that it owed under the Morrow Agreement after the first payment because it was "no longer convenient for us to do so." *Id.* at 97. Shaul Levy, president of L&L Wings, further testified that it L&L Wings did not make any further royalty payments because it was a mistake to enter into the Morrow Agreement as it was not necessary. [DE 328-4] Levy, S. Dep. at 159-160. In opposition to the instant motion, L&L Wings relies on an April 21, 2014, letter written to counsel for Morrow which purports to express its willingness to pay the royalty in a demand that Morrow comply with his obligations under section seven of the Morrow Agreement, [DE 342-6] at 2-3, to contend that it could still pay the royalty which would trigger Morrow's duty to assign it the rights to the WINGS trademark. Such argument fails, as, first, the letter does not express any intention to pay the royalty plus interest as required under the Morrow Agreement and, second, it was tendered after Morrow notified L&L Wings of his assignment of his rights under the Morrow Agreement to Beach Mart. [DE 342-5].

Accordingly, L&L Wings cannot demonstrate that it performed its obligations under the contract, or that a necessary condition to assignment, payment of the full royalty plus interest, has occurred, and summary judgment in Morrow's favor is appropriate as to the breach of contract claim.

II. Breach of Implied Covenant of Good Faith and Fair Dealing.

As this Court has previously held, New York does not recognize "a stand-alone claim for breach of the implied covenant of good faith and fair dealing." *Kelley v. Enviva, LP*, No. 7:14-

5

CV-126-BO, 2015 WL 500473, at *4 (E.D.N.C. Feb. 4, 2015) (citing *MBIA Ins. Corp. v. Royal Bank of Can.,* 28 Misc.3d 1225(A), 2010 WL 3294302, at *43 (N.Y. Sup.Ct. Aug 19, 2010)). L&L Wings has provided no case which calls into question the Court's prior decision, and Morrow's motion for summary judgment as to this claim is therefore granted.

## CONCLUSION

For the foregoing reasons, Morrow's motion for summary judgment [DE 328] is GRANTED. All claims against Morrow alleged by L&L Wings have been adjudicated, and Morrow is entitled to entry of judgment in his favor at the appropriate time.

SO ORDERED, this __19__ day of March, 2018.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE