IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
(Consolidated Action)

| | | |
|---|---|---|
| BEACH MART, INC., | ) | |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| L&L WINGS, INC., | ) ) | |
| Defendant | ) ) | |
| L&L WINGS, INC., | ) | No. 2:11-CV-44-BO |
| Counterclaimant, | ) ) ) | |
| v. | ) ) | |
| BEACH MART, INC., | ) ) | |
| Counter Defendant | ) ) | |
| L&L WINGS, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:14-CV-52-BO |
| SHEPARD MORROW, SUPER WINGS, LLC, and BEACH MART, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

This cause comes before the Court for consideration of the parties' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The appropriate responses and replies have been filed and the matters are ripe for ruling. Also pending and before the Court

for ruling is a motion to amend/correct the amended complaint filed by Beach Mart as well as several motions in limine and a motion for extension of time.

## BACKGROUND

The Court has recounted the procedural history and factual background of this web of litigation involving the rights to the WINGS trademark in numerous previous orders. [DE 183; 211; 220; 233; 301 – 303]. By order entered March 19, 2018, the Court granted Shepard Morrow's motion for summary judgment, concluding that L&L Wings could not demonstrate that Morrow breached the Morrow Agreement and that New York law does not recognize a stand-alone claim for breach of the implied warranty of good faith and fair dealing. [DE 409]. The relevant facts for consideration of the instant motions are as follows.

L&L Wings has been operating retail beach stores since 1978 under the name WINGS. [DE 330-4] 2012 Levy, S. Dep. at 142-43. In May 1992, Shepard Morrow acquired five federal trademark registrations for the name WINGS from Piedmont Industries, which manufactured men's, women's, and children's clothing and apparel products. [DE 328-4] Morrow Decl. at 2-6. In April 1993, Morrow and L&L Wings entered into a licensing agreement to use the WINGS mark (the Morrow Agreement), naming Morrow as the licensor and L&L Wings as the licensee. [DE 342-2]. Under the terms of the Morrow Agreement, L&L Wings agreed to pay Morrow a royalty totaling $100,000 payable in ten equal annual installments, together with interest on the unpaid balance at the rate of 10% per year. *Id.* § 2. The Morrow Agreement further provided in section eight that

> Licensor may terminate this Agreement at any time in the event that Licensee fails to make a Royalty Payment. In such event, Licensor shall deliver written notice of such non-payment to Licensee and allow Licensee fifteen (15) days after the delivery of such notice in which to remit the Royalty Payment (the "Cure Period"). If the Royalty Payment is not made during the Cure Period, then this Agreement shall terminate fifteen (15) days after the date of such notice.

2

*Id.* § 8. L&L Wings made the initial royalty payment of $10,000 upon entry into the Morrow Agreement. On June 10, 1994, Morrow, through counsel, gave L&L Wings written notice of non-payment of the royalty, stating in a letter that he required a check for the overdue royalty payment in the amount of $19,000 payable to Shepard Morrow. [DE 330-48]. The letter further included a draft application to register WINGS as a service mark, to be completed by L&L Wings and returned to counsel for Shepard Morrow for filing with the U.S. Trademark Office. *Id.* On August 2, 1994, Morrow, through counsel, provided L&L Wings with a second notice of nonpayment of the royalty. [DE 330-49]. The letter stated L&L Wings' payment of the royalty remains overdue and that, as interest on the unpaid royalties is compounded, it would be in L&L Wings' best interest to pay the balance as soon as possible. *Id.* It is undisputed that L&L Wings made no further payment to Shepard Morrow under the Morrow Agreement after the initial royalty payment.

In a letter agreement dated August 29, 2005, and effective January 1, 2006 (2005 Agreement), Beach Mart was granted by L&L Wings the exclusive right to use the name BIG WINGS or SUPER WINGS in eight counties in eastern North Carolina until the agreement terminated. [DE 334-3] § 1. Prior to the 2005 Agreement, Beach Mart had operated stores on the Outer Banks of North Carolina under the WINGS name pursuant to a 1995 agreement with L&L Wings. [DE 334-1] Golasa Dec. ¶¶ 2-3. In the 2005 Agreement, Beach Mart acknowledged and agreed that L&L Wings is the owner of the unregistered service mark WINGS and that Beach Mart would not contest L&L Wings' exclusive ownership of all rights to the name WINGS and any similar name. [DE 334-3] § 3. The 2005 agreement was expressly contingent on Beach Mart's ceasing its current use of the name WINGS on or before December 31, 2005, and not using the name WINGS thereafter except in the form of BIG WINGS or SUPER WINGS. *Id.* § 4. On May 5, 2011, L&L Wings notified Beach Mart that it believed Beach Mart to be in violation of the 2005

3

Agreement as L&L Wings had learned that Beach Mart had placed the words "big" and/or "super" in front of the word WINGS in such small letters as to be barely visible, resulting in unauthorized use of the WINGS mark. [DE 334-4]. L&L Wings then notified Beach Mart by letter dated August 9, 2011, that it would be terminating the 2005 Agreement effective October 21, 2011, due to the "growing number of instances of actual confusion with the L&L Wings service mark WINGS, and your use of the 'Super Wings' designation, as well as instances of your insufficient attention to maintaining appropriate quality standards in relation to the goods sold from your 'Super Wings' locations." [DE 334-5].

Each of the five Piedmont WINGS trademark registrations either expired or were cancelled by the U.S. Patent and Trademark Office (PTO) in 1995, 1997, 2005, and 2008. [DE 330-14, 15, 16, 20, 21]. Between 2008 and 2012, L&L Wings obtained three registrations for the WINGS mark from the PTO. Registration No. 3,458,144 for use of WINGS in connection with "retail apparel stores, retail clothing stores, retail discount stores in the field of beachwear clothing" was obtained on July 1, 2008 [DE 330-50]; Registration No. 4,193,881 in connection with beach towels; retail stores services featuring body boards, swim boards, and swim floats; as well as, among other things, men's women's, and children's clothing was obtained on August 21, 2012 [DE 330-51]; and Registration No. 4,205,040 for use in connection with the same goods and services as identified in No. 4,193,881 was obtained on September 11, 2012. [DE 330-52].

On December 31, 2013, Morrow assigned to Super Wings his right, title, and interest in the Morrow Agreement. [DE 330-55]. Such assignment was later rescinded, and Morrow assigned his right, title, and interest in the Morrow Agreement to Beach Mart. [DE 330-55; 330-57]. On April 18, 2014, Morrow notified L&L Wings that he would assign all of his rights and duties under the Morrow Agreement to Beach Mart. [DE 305] Second Amd. Compl. ¶ 39.

4

The following claims remain to be adjudicated as between the parties. Beach Mart has raised in its first amended complaint against L&L Wings [DE 184] claims arising out of the 2005 Agreement for fraudulent inducement to contract, negligent misrepresentation, and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. Beach Mart seeks a declaration that it is lawfully entitled to use the WINGS mark for retail store services on the Outer Banks without permission or consent from L&L Wings, or, alternatively, that the 2005 Agreement remains in full force and effect and that Beach Mart may continue to use the name SUPER WINGS in retail stores pursuant to the 2005 Agreement. Beach Mart has also alleged claims against L&L Wings in connection with L&L's trademark registration of WINGS for cancellation of trademark registrations pursuant to 15 U.S.C. § 1064 and for false or fraudulent registration pursuant to 15 U.S.C. § 1120. In response to Beach Mart's complaint are L&L Wings' counterclaims [DE 304] for breach of the 2005 Agreement, breach of the implied covenant of good faith and fair dealing arising out of the 2005 Agreement, for a declaration that Beach Mart acquired no rights in the WINGS trademark or otherwise as a result of the 2014 assignment from Shepard Morrow, and a declaration that L&L Wings is the owner of the WINGS name in connection with retail stores, beachwear, and beach related products.

In L&L Wings' second amended complaint against Beach Mart and Super Wings [DE 305] it has alleged claims arising out the 2014 assignment of the Morrow Agreement for tortious interference with contract and civil conspiracy to tortiously interfere with contract. In response, Beach Mart has counterclaimed seeking a declaration that the 2014 assignment of the Morrow Agreement was valid, effective, and continuing; that it was properly assigned to Beach Mart in 2014; and that all rights and registrations in the WINGS trademark presently held by L&L Wings be held in a constructive trust in favor of Beach Mart. [DE 325]. Alternatively, Beach Mart seeks

5

cancellation of L&L's trademark registrations due to L&L Wings' widespread and unrestricted licensing.

## DISCUSSION

Motion to Amend

Beach Mart seeks to amend or correct its complaint to add additional factual support for its claims for cancellation of trademark registrations under 15 U.S.C. § 1064 and for fraudulent registration pursuant to 15 U.S.C. § 1120. Beach Mart specifically seeks to add factual allegations concerning information provided by L&L Wings in its 2013 and 2015 incontestability declarations filed with the PTO. *See* 15 U.S.C. § 1065. In those declarations, counsel for L&L Wings affirmed that "there is no proceeding involving said rights pending in the United States Patent and Trademark Office or in a court and not finally disposed of," when, in fact, this litigation was pending. *Id.* at (2). The decision to allow leave to amend a pleading rests within the discretion of the trial court and should "be freely given when justice so requires." Fed. R. Civ. P. 15(a); *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). Leave to amend should be denied only when the amendment would be prejudicial to the opposing party, when there has been bad faith on the part of the moving party, or when the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

In opposition to the motion to amend, L&L Wings has proffered that its incontestability declarations have been or are being withdrawn. [DE 343 at 24 n. 15]. Furthermore, the Court is unaware that a finding of fraud in an incontestability declaration would in this circuit result in cancellation of the underlying trademark registration as opposed to merely a denial of incontestability. *See, e.g., Skippy, Inc. v. CPC Int'l, Inc.*, 674 F.2d 209, 216 (4th Cir. 1982) (vacating court's finding that right to mark had become incontestable where shown that there was

fraud in the incontestability declaration); *see also* 6 McCarthy on Trademarks and Unfair Competition § 31:81 (5th ed.) (author's opinion that "fraud in a Section 15 incontestability affidavit or declaration should only serve to eliminate the incontestable status of the registration and not result in cancellation of the registration itself."); *but see Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) ("false statements made in an incontestability affidavit may jeopardize not only the incontestability claim, but also the underlying registration.").

In light of the foregoing, as well as the late stage of these proceedings, the Court finds that amendment to add the additional factual allegations would be futile and the motion to amend is DENIED.

Motions for Summary Judgment

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v.*

*Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

I. The Morrow Agreement terminated in 1994.

The Morrow Agreement, by its express terms in section eight, terminated on or about August 17, 1994, after L&L Wings failed, after notice, to pay the royalties. Beach Mart's claims for fraud in the inducement, negligent misrepresentation, and unfair and deceptive trade practices therefore fail.

The elements of a claim for fraud in the inducement are (1) false representation or concealment of a material fact, which is (2) reasonably calculated to deceive and is (3) made with the intent to deceive and which (4) does in fact deceive, resulting in (5) damage to the injured party. *Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992). Because the Morrow Agreement terminated in 1994, Beach Mart's claim that L&L Wings' failure to disclose the existence of Morrow Agreement during the negotiation of the 2005 Agreement fails as there was no material fact which was concealed or false representation made. Insofar as Beach Mart's claim is based on a failure to disclose a superior right to the WINGS mark held by Morrow, any information regarding rights to the WINGS trademark held by Morrow were in the public domain and certainly attainable by counsel for Beach Mart with the exercise of due diligence. The finding that the Morrow Agreement had terminated in 1994 and that any registration in the WINGS trademark may have continued to be held by Morrow was in the public domain further supports that Beach Mart cannot proceed with a claim for negligent misrepresentation. *See Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988) ("negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable

8

care by one who owed the relying party a duty of care."). Moreover, Beach Mart cannot establish a duty of care owed by L&L Wings as "[c]ontracting parties in a commercial transaction are not in a relationship of trust and confidence." *Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 477 (E.D.N.C. 2013). The Court concludes that summary judgment in favor of L&L Wings is appropriate as to Beach Mart's fraud in the inducement and negligent misrepresentation claims. At bottom, Beach Mart's unfair and deceptive trade practices claim hinges on its fraud in the inducement and negligent misrepresentation claims, and it thus also fails. *See, e.g., Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 453 (2009) (fraud in the inducement necessarily constitutes an unfair and deceptive trade practice); *see also Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 903 (4th Cir. 1996) (alterations and citation omitted) (trade practice is deceptive when it has "the tendency or capacity to mislead, or create the likelihood of deception.").

This holding also resolves L&L Wing's claims against Beach Mart and Super Wings for tortious interference with contract and conspiracy to commit tortious interference with contract. Because the Morrow Agreement terminated in 1994, there was no contract with which Beach Mart and Super Wings could interfere or conspire with which to interfere. *See Embree Const. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498 (1992) (elements of claim for tortious interference with contract include a valid contract).

This holding further resolves Beach Mart and Super Wings' counterclaim for a declaratory judgment that the Morrow license is valid and L&L's counterclaim that Beach Mart acquired no rights to the WINGS trademark by or through the assignment of the Morrow Agreement. As the Morrow Agreement terminated in 1994, its assignment in 2014 to Super Wings and later to Beach

9

Mart was invalid. Beach Mart accordingly has acquired no rights to the WINGS trademark by or through the assignment of the Morrow Agreement.

II.    L&L Wings' counterclaims arising out of the 2005 Agreement are time barred.

L&L's counterclaims for breach of contract and breach of the implied warranty of good faith and fair dealing are barred by the statute of limitations. L&L Wings' counterclaims arising out of the 2005 Agreement are based on Beach Mart's use of the WINGS mark standing alone; use of SUPER WINGS where the word "super" was not adequately visible; and alleged customer confusion through the use of fonts, color, and logos substantially similar to those used by L&L Wings.

There is no dispute that the 2005 Agreement is governed under North Carolina law. In North Carolina, the statute of limitations on a breach of contract and breach of implied warranty of good faith and fair dealing claim is three years. *Penley v. Penley*, 314 N.C. 1, 19 (1985); N.C. Gen. Stat. § 1-52(1). A breach of contract cause of action accrues when the breach occurs, not on discovery of the breach. *City of Reidsville v. Burton*, 269 N.C. 206, 211 (1967); *Liptrap v. City of High Point*, 128 N.C. App. 353, 355 (1998). Rather, "as soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run. It does not matter that further damage could occur; such further damage is only aggravation of the original injury." *Pembee Mfg. Corp. v. Cape Fear Const. Co.*, 313 N.C. 488, 493 (1985).

The facts and circumstances which L&L Wings alleges amount to breach of the 2005 Agreement have been occurring since 2006 and would have been reasonably apparent to L&L Wings since that time. *See, e.g.,* [DE 334-22] 2012 Drezner Dep. ¶ 7 (Outer Banks Sunny Day Guide has continued to identify Beach Mart stores as "Wings" in some references since 2006

10

despite Beach Mart's requests to use "Super Wings"); [DE 334-9] (2006 Telephone Book identifying Beach Mart stores as "Wings" stores); [DE 334-22] 2012 Drezner Decl. ¶ 4 (exterior signs changed before December 31, 2015, to show "Super Wings"); [DE 334-24] (photographs of "Super Wings" exterior signs displaying "super" in a much smaller font than "Wings"). Additionally, the Court would note that the 2005 Agreement does not address the use of similar font, colors, or logos by Beach Mart; rather, its terms are limited to use of the WINGS mark in isolation.

L&L Wings' argument that the breach was continuous and reoccurring and thus the limitations period did not accrue until later is without merit. Beach Mart's conduct which L&L Wings contends amounts to breach has been occurring for more than three years prior to the filing of L&L Wings' claims, and there is no allegation that L&L Wings was not aware or could not reasonably have become aware of Beach Mart's actions. L&L Wings alleged its claims for breach of the 2005 Agreement at the earliest in November 2011, and they are thus time-barred. Summary judgment in favor of Beach Mart on L&L Wings' breach of contract and breach of the implied warranty of good faith and fair dealing counterclaims is appropriate.

III.     L&L Wings' trademark registrations are not subject to cancellation.

Beach Mart seeks cancellation of L&L's trademark registrations first on the basis of fraud on the patent office and second on the basis of naked or unrestricted licensing.

Section 1120 of the Lanham Act provides that

Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120; *see also* 15 U.S.C. § 1064. Beach Mart contends that after L&L Wings' trademark applications were repeatedly rejected over a period of twenty years of trying to register

the WINGS mark, L&L Wings resorted to misrepresenting true facts and presenting lies to the PTO in order to obtain trademark registration. Specifically, Beach Mart alleges that L&L Wings lied to the PTO when it stated on its application that the WINGS trademark was no longer being used by Morrow or his predecessor-in-interest Piedmont Industries.

"A mark shall be canceled if its registration was fraudulently obtained." *Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F.3d 417, 420 (4th Cir. 1998). A party alleging fraud on the PTO "must prove by clear and convincing evidence that [the defendant] 'knowingly made false, material representations of fact' and intended to deceive the Patent and Trademark Office." *Id.* (alterations and citation omitted). The oath that must be submitted to the PTO is "phrased in terms of a subjective *belief*, such that it is difficult to prove fraud so long as the affiant or declarant has an honestly held, good faith belief." *Id.* (quoting 5 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 31:76, p. 31–116 to 117 (4th ed.1998) (alteration omitted)).

The record here supports that in its application to the PTO, L&L Wings had a good faith belief that it was the owner of the WINGS mark for retail store services, as opposed to the WINGS mark for clothing as L&L believed Morrow to own, and that its license from Morrow was irrelevant. *See* [DE 330-2] 2013 Krasner Dep. at 210-211. The PTO was also by its own records aware of the Morrow registration, as indeed this was in part the basis for the PTO's rejecting of L&L Wings' 2006 service mark registration application. [DE 330-53]. In light of the absence of evidence, as opposed to argument, that L&L Wings intended to deceive the PTO as well as the high burden of proof that Beach Mart must meet, the Court holds that entry of summary judgment in L&L Wings' favor is appropriate.

The Court next considers Beach Mart's claim that L&L Wings is no longer entitled to trademark registration due to widespread and unrestricted licensing. Naked licensing occurs when

12

a trademark owner licenses use of its mark and fails thereafter to exercise quality control over the licensee's use of the mark. *See Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3d Cir.1992). A pattern of naked licensing may result in abandonment of the trademark. *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515–16 (9th Cir.2010; *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 213 F.Supp.2d 612, 621 (E.D .Va.2002). Because a finding of abandonment results in cancellation of the trademark registration, a party faces a heavy burden to establish abandonment through naked licensing. *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977).

Beach Mart contends that seven agreements to use the WINGS mark entered into by L&L Wings amount to naked licensing: the Dror Levy & Marco-Destin agreement which related to WINGS stores operating from the early 1990s to approximately 2009 in Florida, South Carolina, Alabama, and Mississippi; the Etsion Tacobi & Keytop, Inc. agreement which related to two WINGS stores operating in Clearwater, Florida from 2001 to 2005; the Xeev Tafel & ZT Inc. agreement which related to WINGS stores operating in San Padre Island, Texas from 1999 to 2010; the Haim Hayton & Tim Anglim/SWF Management agreement which related to two WINGS stores operating in Ft. Myers, Florida from 1993 to 1995; the Noah Rosenberg agreement which related to WINGS stores operating in Sarasota, Florida from 1994 to 1998; the Moshe Hemmo agreement which related to a WINGS store in North Myrtle Beach, South Carolina operating from 2002 to 2010; and the Rafael & Efraim Benjamin agreement which related to two WINGS stores in Myrtle Beach, South Carolina operating from 1999 to 2009. *See* [DE 334-10 – 334-20].

In defense of this claim, L&L Wings has asserted licensee estoppel, which prevents a licensee from challenging the validity of the licensor's mark. *See, e.g., Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975) ("a licensee is estopped to

contest the validity of the licensor's title during the course of the licensing arrangement."). Each of the seven agreements identified by Beach Mart to have constituted naked licensing was entered into and terminated prior to L&L Wings' termination of the 2005 Agreement with Beach Mart, effective October, 21, 2011. Because "licensees are estopped from raising any events prior to the termination of the license to challenge the validity of the licensor's trademarks," *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 927 (C.D. Ill. 2000), Beach Mart cannot rely on any allegedly naked licensing by L&L Wings which took place during Beach Mart's license agreement to challenge the validity of L&L Wings' mark.

Beach Mart's arguments that the doctrine of equitable estoppel should not apply in this case are unavailing. First, the doctrine is an equitable one, and thus courts are free to consider the facts of a particular case when determining whether to apply it. *Westco Grp., Inc. v. K.B. & Assocs., Inc.*, 128 F. Supp. 2d 1082, 1090 (N.D. Ohio 2001). Second, as argued by Beach Mart, the purpose of allowing a licensee to raise the licensor's failure control third-parties is to protect the value of *its* license. *Westco Grp.*, 128 F. Supp. 2d at 1090. Here, the alleged lack of control occurred in some instances nearly a decade prior to the institution of this action, and, moreover, Beach Mart's licensing agreement has been terminated by L&L Wings. The Court concludes that application of the equitable doctrine of licensee estoppel is appropriate in this instance and that it bars Beach Mart's claim seeking to cancel registration of L&L Wings' trademark due to abandonment. Summary judgment in favor of L&L Wings' on this claim is therefore appropriate, and Beach Mart is not entitled to a declaration that it is lawfully entitled to use the WINGS mark for retail store services in the Outer Banks without permission or consent from L&L Wings. *See also* § 1, *supra* (Morrow Agreement terminated in 1994 and Beach Mart acquired no rights through its assignment).

IV. Remaining declaratory judgment claims.

Remaining for resolution are two claims for declaratory judgment pursuant to 28 U.S.C. § 1102. A district court may in its discretion decline to exercise jurisdiction over a declaratory judgment action as no mandatory obligation to declare the litigant's rights is imposed by the Declaratory Judgment Act. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998). A court's discretion in declining to exercise jurisdiction over a declaratory judgment action is not unfettered and it may only do so for good reason. *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937).

Here, the parties have stated in open court that monetary damages are no longer an issue in this case. The Court is mindful that "the [Declaratory Judgment] Act's purposes are better served by encouraging parties to attempt resolution of disputes prior to initiating litigation, and, [finds] therefore [that] the exercise of jurisdiction [in this matter] runs counter to the policy of (i) encouraging settlement of disputes prior to litigation and (ii) preventing parties from using declaratory judgment actions as a tool to strengthen a negotiation position or to preempt claimant's choice of forum." *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp.2d 823, 829-30 (E.D.Va. 2001).

As the Court has resolved the underlying substantive claims brought in these two actions, namely for breach of contract, fraud in the inducement, negligent misrepresentation, and unfair and deceptive trade practices, the Court in its discretion declines to exercise jurisdiction over the remaining declaratory judgment claims which seek (1) a declaration that the 2005 Agreement remains in full force and effect and (2) a declaration that L&L Wings is the owner of the WINGS name in connection with retail stores, beachwear, and beach related products.

V. Discovery sanctions.

By order entered October 3, 2014, the Court granted Beach Mart's motion for sanctions against L&L Wings. [DE 233]. The Court awarded Beach Mart attorneys' fees and costs incurred in connection with its attempts to discover licensing agreements not disclosed by L&L Wings. The Court further, as a sanction, dismissed L&L Wings' trademark infringement counterclaims against Beach Mart.

Beach Mart has submitted its application seeking fees in the amount of $146,794.00, and costs in the amount of $13,503.60. The Court has reviewed the bases for Beach Mart's request and finds the fees and costs generally to be reasonable and consistent with the Court's order imposing sanctions. *See McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). However, the time spent in preparing the motion for sanctions was excessive and at times duplicative, and the fee award will be reduced by $14,206.00. The travel fees will be reduced by fifty-percent for further reduction of $25,151.75. *See, e.g., Aventis CropScience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, No. 1:00CV463, 2010 WL 2306677, at *6 n.10 (M.D.N.C. June 8, 2010). The Court further finds a portion of the travel costs to be unreasonable (e.g. $724.64 for one night of lodging in New York) and reduces these costs by fifty percent, resulting in a reduction to the overall cost request by $2,127.77. Beach Mart's application for fees and costs [DE 234] is ALLOWED but the amount is REDUCED to $107,436.25 in fees and $11,375.83 in costs.

## CONCLUSION

For the foregoing reasons, the motion to amend/correct complaint [DE 338] is DENIED and the motions for summary judgment [DE 327 & 332] are GRANTED IN PART and DENIED IN PART. The motions in limine filed in preparation for trial [DE 365, 367, 369, 371, 373, 374, 376, 383, 395, 398, 405] are DENIED AS MOOT. The consent motion to seal confidential

financial data [DE 393] is GRANTED and the consent motion for extension of time to respond to motions in limine [DE 410] is DENIED AS MOOT. Sanctions against L&L Wings as previously imposed are awarded in the amount of $107,436.25 in fees and $11,375.83 in costs.

The clerk is DIRECTED to enter judgment in this consolidated action in accordance with this order and those orders at DE 220, 233, 301, 303, 409. The clerk is further DIRECTED to file such judgment in case No. 2:11-CV-44-BO and case No. 2:14-CV-52-BO and to close both cases.

SO ORDERED, this 28 day of March, 2018.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE