IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:11-CV-44-FL

| | |
|---|---|
| BEACH MART, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) MEMORANDUM OPINION |
| L&L WINGS, INC., | ) ) |
| Defendant. | ) ) |

This matter came before the court for trial commencing November 2, 2020. The court memorializes herein reasons for granting in part and denying in part Beach Mart, Inc.'s ("Beach Mart") renewed motion in limine as to attorney-client privilege, advice of counsel, and incorrect legal principles (DE 619), denying L&L Wings, Inc.'s ("L&L Wings") motion in limine to exclude evidence of declarations of incontestability (DE 543), and denying L&L Wings motion in limine to exclude evidence of, or reference to, legal authority (DE 531).

**COURT'S DISCUSSION**

A. Beach Mart's Renewed Motion in Limine as to Attorney-Client Privilege, Advice of Counsel, and Incorrect Legal Principles (DE 619)

In its renewed motion, Beach Mart seeks to preclude L&L Wings from 1) relying on an advice of counsel defense or eliciting testimony from Bennet Krasner ("Krasner") about his internal thought processes while representing L&L Wings, 2) eliciting testimony from fact witnesses on legal issues, and 3) eliciting testimony from witnesses suggesting that Shepard Morrow ("Morrow") lacked rights in the WINGS mark.

1. Advice of Counsel Defense

Beach Mart sought to preclude L&L Wings from asserting an advice of counsel defense, on grounds that Krasner, L&L Wings's attorney during the relevant time period, refused to testify during his deposition about any advice he gave L&L Wings, invoking the attorney-client privilege.

Several circuits[1] have held that a party asserting an advice of counsel defense waives attorney-client privilege, because to hold otherwise would be to allow the party to use "the attorney-client privilege as both a sword and a shield." In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006); see United States v. Workman, 138 F.3d 1261, 1264 (8th Cir. 1998) ("The attorney client privilege cannot be used as both a shield and a sword, and [defendant] cannot claim in his defense that he relied on [counsel's] advice without permitting the prosecution to explore the substance of that advice.").

Based on this reasoning, the United States Court of Appeals for the Ninth Circuit has excluded the advice of counsel defense where L&L Wings invoked the attorney-client privilege during discovery in refusing to answer relevant questions. See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1196 (9th Cir. 2001); c.f. In re Edmond, 934 F.2d 1304, 1308 (4th Cir. 1991) ("[T]he Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion.").

---

[1] Although the United States Court of Appeals for the Fourth Circuit has not addressed in a majority in opinion whether invocation of the advice of counsel defense waives attorney-client privilege, Judge Wynn concluded in a concurring opinion that "'[i]t has become established that if a party interjects the 'advice of counsel' as an essential element of a claim or defense,' then 'all advice received concerning the same subject matter' is discoverable, not subject to protection by the attorney-client privilege, and, by logical extension, admissible at trial." U.S. ex rel. Drakeford v. Tuomey, 792 F.3d 364, 391 (4th Cir. 2015) (Wynn, J., concurring in the judgment) (quoting 1 McCormick On Evid. § 93 (7th ed. 2013)).

At final pretrial conference, on October 14, 2020, Beach Mart identified three questions that Krasner purportedly refused to answer during his deposition on grounds of attorney-client privilege. First, Beach Mart claims that Krasner refused to explain why he did not disclose L&L Wings's 1993 license agreement with Morrow (the "Morrow License") to the United States Patent and Trademark Office ("USPTO"). Over the course of Krasner's several depositions, Krasner was asked the question at issue several times. As shown below, Krasner answered the question on at least one occasion:

> **Q**. Now, did you ever tell – whether you thought it was relevant or not, did you ever tell the Trademark Office about L&L's acknowledgment in the license agreement with Shepard Morrow about his ownership of the Wings trademark as defined in that license, either you did or you didn't?
>
> **A.** I did not deem it relevant because you just made an assumption that L&L Wings acknowledged. I did not -- do not recall that that agreement was ever delivered. And, therefore, it was not acknowledged.
>
> **Q**. And is that the reason you never told the Trademark Office about it?
>
> **A.** It was irrelevant – that's one reason. But the other reason would be very simple. You and I interpret that agreement differently. L&L Wings had operated retail beachwear stores since, I believe, it was 1978 under the name. We didn't acknowledge that Shepard Morrow had the rights to beachwear stores. He had the rights to clothing in his trademarks. This was an application for retail clothing stores, if I'm correct.

(Krasner 2013 Dep. (DE 157-6) 212:23-214:3). Where Krasner answered the question at issue during his 2013 deposition, he is permitted to answer this question at trial.

Next, Beach Mart claims that Krasner refused to testify at his depositions whether he did anything to determine if he had obligation to disclose the Morrow license to the USPTO. As shown in the excerpt below, Krasner refused to answer that question, on grounds of privilege:

> **Q**. Sir, what, if anything, did you to determine whether or not you had an obligation to disclose any details of the Morrow license to the Trademark Office at any time?

3

Case 2:11-cv-00044-FL   Document 637   Filed 11/13/20   Page 3 of 11

> **A**. I believe that is privileged, too.
>
> **Q.** Do you refuse to answer the question?
>
> **A**. I refuse to answer the question.

(Krasner 2017 Dep. (DE 348-46) 46:12-18). Where Krasner refused to answer this question during his deposition, he may not answer this question at trial, or otherwise allow L&L Wings to use the attorney-client privilege impermissibly as a sword and shield.

Finally, Beach Mart seeks to preclude Krasner from testifying at trial as to why he believed that the declarations of incontestability were truthful. However, as shown below, Krasner answered that question at least once during his 2017 deposition:

> **Q.** Okay. Well, let's look at the next one. The next one says, "There is no proceeding involving said rights pending, and not finally disposed of, either in the United States Patent & Trademark Office, or in a court." Do you see that, sir?
>
> **A.** Yes.
>
> **Q**. That's not true, is it?
>
> **A**. To my knowledge, it is true.
>
> **Q**. Sir, isn't this lawsuit a proceeding that involves rights to the Wings trademark that's in a court, that hasn't been adjudicated or disposed of?
>
> **A**. The rights for L&L Wings to use the mark predate -- the -- the lawsuit predate Shepard Morrow's agreement. And Shepard Morrow's agreement, as I recall, had a clause in there that, notwithstanding its termination in any way, shape, or form, the -- Wings would still be entitled to use the mark. As we discussed for five and a half hours on the agreement years ago, they wanted a clause in -- Shepard Morrow wanted a clause in that we would remove the mark upon termination, and we refused. I refused to put that in the agreement. So the right to use the mark has never been in dispute.
>
> **Q**. Sir, you already told me that you understand that this lawsuit involves a dispute over who owns the Wings trademark. Do you remember that? In other words, Beach Mart claims to own the trademark; L&L claims to own the trademark. Isn't that true, sir?

4

> **A**. No. I believe Beach Mart is claiming to own the mark for classes unrelated to retail store services.
>
> **Q**. And what do you base that on, sir?
>
> **A**. Shepard Morrow's agreement those four or five classes were not for retail store services.

(Krasner 2017 Dep. (DE 348-46) 74:13-76:1). Therefore, Krasner may answer this question at trial.

In sum, since Krasner testified during his depositions as to why he did not disclose the Morrow license to the USPTO, and why he considered the declarations of incontestability to be truthful, he may provide that testimony at trial, and Beach Mart's motion is denied in this part. However, where Krasner refused to testify during his deposition about his efforts to discover his disclosure obligations, the weight of authority suggests that it would be impermissible to allow him to provide such testimony at trial, and Beach Mart's motion is granted in this part.

2. Fact Witness Testimony

Beach Mart seeks to preclude Krasner and Ariel Levy from testifying about legal issues, since they are fact witnesses.

Lay witness "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. A lay witness may "offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived." Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 203 (4th Cir. 2000); see United States v. Hassan, 742 F.3d 104, 135–36 (4th Cir. 2014). However, "at bottom, Rule 701 forbids the admission of expert testimony dressed in lay witness clothing." Perkins, 470 F.3d at 156.

5

a. Krasner

Although Krasner is an attorney, L&L Wings did not designate him as an expert witness. Therefore, Krasner is a lay witness, and he may not provide opinions based upon specialized knowledge. Fed. R. Evid. 701. Nevertheless, Krasner's intent and state of mind, during the operative time frame, including whether Krasner believed that L&L Wings owned the WINGS mark, is at the heart of Beach Mart's claims for fraudulent inducement to contract and false or fraudulent trademark registration. In addition, such testimony is rationally based on Krasner's perception, where it involves his prior understanding. Therefore, Krasner may offer testimony on his prior understanding, to the extent it is based upon relevant historical or narrative facts that he has perceived. In so doing, Krasner must be careful to avoid specialized terms and phrases, or to otherwise testify on the basis of specialized knowledge. See Perkins, 470 F.3d at 156 ("At bottom . . . Rule 701 forbids the admission of expert testimony dressed in lay witness clothing.").

b. Ariel Levy

Ariel Levy is also a fact witness, and therefore, he may "offer an opinion on the basis of relevant historical or narrative facts that [he] has perceived." Sinkovich, 232 F.3d at 203. In support of the instant motion, Beach Mart identifies certain portions of the transcript from Ariel Levy's 2015 deposition, where Ariel Levy offers testimony based upon legal principles. See (Mem. (DE 620) at 11) ("Mr. [Ariel] Levy then testified that he believes 'merchandise would have had to have been active along with these registrations' based upon his 'very, very limited basic understanding of trademark law.'"). At trial, Ariel Levy may not offer such testimony, where it is based upon legal principles and specialized knowledge. See Fed. R. Evid. 701.

6

Case 2:11-cv-00044-FL   Document 637   Filed 11/13/20   Page 6 of 11

3. Licensee Estoppel

Beach Mart seeks to preclude L&L Wings's witnesses from denying that Morrow owned the WINGS mark. According to Beach Mart, L&L Wings is estopped denying Morrow's trademark rights, since it entered into a license agreement with Morrow.

In remanding the instant case, the United States Court of Appeals for the Fourth Circuit explained "some courts [ ] have held that a licensee is estopped to contest the validity of the licensor's title during the course of the licensing arrangement, because a licensee may not enjoy the use of the licensed mark while at the same time challenging the mark as being invalid." Beach Mart, Inc., 784 F. App'x at 127 (internal citations omitted). However, the Fourth Circuit clarified that "as an equitable doctrine [ ] licensee estoppel generally will not be applied by a court if doing so would cause an inequitable result." Id. (citing John C. Flood of Va., Inc. v. John C. Flood, Inc., 642 F.3d 1105, 1110-11 (D.C. Cir. 2011).

Here, disputed factual issues, such as whether the Morrow license terminated, bear of the applicability of licensee estoppel. See e.g., Bucky v. Sebo, 208 F.2d 304, 305 (2d Cir. 1953) ("[T]he licensee may be estopped to contest validity. But even this estoppel usually vanishes when the license terminates."). Accordingly, the court declines to apply the doctrine of licensee estoppel, so as to avoid an inequitable result.[2]

B.   Motion in Limine to Exclude Declarations of Incontestability (DE 543)

L&L Wings seeks to exclude all argument, testimony, or other evidence, concerning L&L Wings's declarations of incontestability associated with U.S. Trademark Registration Nos. 3,458,144 ("'144 registration") and 4,193,881 ("'881 registration") on grounds that they are irrelevant, unfairly prejudicial, and barred by Federal Rule of Evidence 404.

---

[2] The court's refusal to apply the doctrine of licensee estoppel does not open the door for L&L Wings's fact witnesses to offer opinions based upon specialized knowledge regarding Morrow's rights in the WINGS mark.

7

On July 16, 2013, Krasner filed a declaration of incontestability with the USPTO, declaring that "there is no proceeding involving the '144 registration pending", and on August 23, 2017, Krasner filed a second declaration of incontestability, declaring that "there is no proceeding involving the '881 registration pending." ((DE 338-1) at 3). According to Beach Mart, the declarations of incontestability contained knowingly false statements in light of the instant action. (Id.).

Federal Rule of Evidence 404 generally prohibits evidence of other crimes or bad acts to prove character and conduct in accordance with character. See Fed. R. Evid. 404(b)(1). Such evidence, however, may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "Rule 404(b) is viewed as an inclusive rule." United States v. Young, 248 F.3d 260, 271 (4th Cir. 2001) (internal quotation marks omitted). "To be admissible under Rule 404(b), evidence must be (1) relevant to an issue other than character; (2) necessary; and (3) reliable." United States v. Siegel, 536 F.3d 306, 317 (4th Cir. 2008) (internal quotation marks omitted). Additionally, evidence should be excluded under Rule 404(b) if its probative value is substantially outweighed by its unfair prejudice to the defendant. United States v. Johnson, 617 F.3d 286, 296–97 (4th Cir. 2010). "The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." United States v. McBride, 676 F.3d 385, 397 (4th Cir. 2012).

Here, allegedly false statements Krasner made in his declarations of incontestability to the USPTO in conjunction with the '881 and '144 registrations are "related in time and pattern", McBride, 676 F.3d at 397, to the allegedly false statements he made in the trademark registration applications, which form the basis of Beach Mart's false or fraudulent registration claim. This

8

similarity heightens the relevance of such evidence, which can be used to show intent or absence of mistake, rather than character, or conduct in conformity therewith.

L&L Wings argues that "[e]ven if Bennett D. Krasner's filing of the Declarations of Incontestability were false and fraudulent as Beach Mart is expected to allege, such actions following the commencement of this lawsuit cannot be used to show actions in conformity with allegedly fraudulent actions prior to this lawsuit [under Rule 404]." (Mem. (DE 544) at 6). However, "[t]here is no distinction between 'prior' bad acts and 'subsequent' bad acts for the purposes of Rule 404(b), which speaks only of 'other' bad acts." United States v. Lighty, 616 F.3d 321, 352 (4th Cir. 2010); see United States v. Hadaway, 681 F.2d 214, 217–18 (4th Cir.1982) ("[I]t is immaterial whether the instances are found occurring before or after the act charged.")). As such, L&L Wings's argument is unpersuasive.

Next, L&L Wings argues that evidence pertaining to the declarations of incontestability should not be admitted because Krasner subsequently withdrew the declarations. However, Krasner's subsequent withdrawal of the declarations goes to the weight, rather than the admissibility of this evidence. Moreover, L&L Wings may inform the jury the Krasner later withdrew the declarations by eliciting this testimony at trial.

Finally, L&L Wings argues the evidence must be excluded under Federal Rule of Evidence 403 because the declarations of incontestability would distract, confuse, or mislead the jury. Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Fourth Circuit has explained that "[b]ecause the evidence sought to be excluded under Rule 403 is concededly probative, the balance under Rule 403 should be struck in favor of

9

admissibility, and evidence should be excluded only sparingly." United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996). Given the preference under Rule 403 for admissibility, and the fact L&L Wings can mitigate any risk of confusion by clarifying issues during cross-examination, evidence pertaining to the declarations of incontestability is admissible.

C.  Motion in Limine to Exclude Evidence of, or Reference to, Legal Authority (DE 531)

L&L Wings seeks to exclude the following exhibits, identified by Beach Mart in its pre-trial disclosures: 1) 37 C.F.R. § 11.303; 2) 37 C.F.R. § 11.804; 3) 37 C.F.R 11.801; and 4) 37 C.F.R. § 11.18.[3] In support, L&L Wings argues the foregoing exhibits "invade . . . the province of the court to determine the applicable law and to instruct the jury as to that law", citing HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 587 (1991). L&L Wings also argues they should be excluded under Rule 403.

The regulations at issue set forth an individual's duty to be truthful in its submissions to the USPTO. See (DE 531-2); (DE 531-3) (DE 531-4); (DE 531-5). Beach Mart indicates that it proffers the regulations for use during Krasner's deposition, to inquire whether Krasner was aware of his duty to be truthful before the USPTO. Where Beach Mart seeks to use these exhibits to show Krasner's state of mind, rather than establish a legal proposition, admission of these exhibits does not invade the court's province in instructing the jury as to the law.

L&L Wings's argument that the exhibits should be excluded under Rule 403 as unfairly prejudicial is also unpersuasive. "[U]ndue prejudice occurs when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir.

---

[3]  L&L Wings also moved to exclude McCarthy on Trademarks & Unfair Competition §§ 25:32 and 25:33, which Beach Mart intended to introduce during its cross-examination of L&L Wing's expert Phillip Hampton. However, at trial, L&L Wings indicated that it no longer intends to call Phillip Hampton as a witness, and as such, this part of the motion in limine is now moot.

1996) (internal quotations omitted). Regulations are unlikely to excite a jury to irrational behavior, and their probative value is substantial, where Krasner's awareness of these regulations is a fact of consequence.

Accordingly, L&L Wings's motion in limine to exclude evidence of, or reference to, legal authority is denied.

## CONCLUSION

Based on the foregoing, Beach Mart's partial motion to reconsider (DE 619) is GRANTED IN PART AND DENIED IN PART as set forth herein. L&L Wings's motion in limine to exclude evidence of declarations of incontestability (DE 543) and motion in limine to exclude evidence of, or reference to, legal authority (DE 531) are DENIED.

SO ORDERED, this the 13th day of November, 2020.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　LOUISE W. FLANAGAN
　　　　　　　　　　　　　　　　　United States District Judge