IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:11-CV-44-FL

| | | |
|---|---|---|
| BEACH MART, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| L&L WINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the court March 16, 2021, for hearing on defendant's post-trial motion to require plaintiff to elect remedies (DE 651), and its motion for declaratory judgment (DE 658), together with plaintiff's motion to seal the court's October 23, 2020, order (DE 673). Arguments concerning plaintiff's proposed judgment (DE 657), and defendant's objections thereto, also were heard. For the following reasons, the court grants in part and denies in part defendant's motion to require plaintiff to elect remedies. The court memorializes herein its conclusion that defendant's conduct constitutes unfair and deceptive trade practices. Defendant's motion for declaratory judgment is denied. Finally, the court directs the clerk to enter judgment in the form herein prescribed.[1]

---

[1] Plaintiff's motion to seal, (DE 673), was allowed at hearing.

# BACKGROUND

This case involves a dispute between two beachwear retailers—formerly aligned in business but now fierce competitors—regarding the trademark "WINGS." The court recounts procedure pertinent to the issues now under consideration. Following reassignment of this matter to the undersigned,[2] jury trial commenced November 2, 2020, on plaintiff's claims for fraudulent inducement to contract; negligent misrepresentation; cancellation of trademark registration under 15 U.S.C. § 1064; false or fraudulent trademark registration under 15 U.S.C. § 1120; and unfair and deceptive trade practices, in violation of North Carolina General Statute § 75-1.1; as well as its counterclaim for trademark cancellation due to naked licensing. The jury returned a verdict in favor of plaintiff on all claims and counterclaim November 16, 2020, awarding damages in the same amount of $4,184,135.00 on each of plaintiff's claims.

Following return of the jury's verdict, plaintiff requested the opportunity to file a proposed judgment for the court's consideration given anticipated complexities. Pursuant to an agreed upon schedule, plaintiff filed its proposed judgment, to which defendant objected. Defendant also lodged a broad-based motion to require plaintiff to elect its remedies, and made separate motion seeking declarations that plaintiff lacks any rights in the WINGS mark, on various grounds, and that defendant owns the WINGS mark. Supplemental briefing filed several days after hearing March 16, 2021, has been considered as well.

---

[2] This case originally was assigned to Senior United States District Judge James C. Fox, and then reassigned to United States District Judge Terrence W. Boyle on May 24, 2017, before being reassigned to the undersigned on August 28, 2019.

2

Case 2:11-cv-00044-FL   Document 687   Filed 03/26/21   Page 2 of 19

# COURT'S DISCUSSION

A. Defendant's Motion to Elect Remedies (DE 651)

"The common law doctrine of election of remedies applies where two possible remedies are available for the same legal injury." Homeland Training Ctr., LLC v. Summit Point Auto. Rsch Ctr., 594 F.3d 285, 292–93 (4th Cir. 2010) (citation omitted). "The basic purpose of the doctrine is to prevent a plaintiff from obtaining a windfall recovery, either by recovering two forms of relief that are premised on legal or factual theories that contradict one another or by recovering overlapping remedies for the same legal injury. Id. (citation omitted).

As a preliminary matter, the election of remedies is an affirmative defense that must be pleaded before it can be asserted. See Baker v. Edwards, 176 N.C. 229, 233–34, (1918); see also Hertz v. Mills, 10 F. Supp. 979, 981 (D. Md. 1935) ("[T]he defense of election of remedies must be pleaded in order to be available."). Although defendant did not plead the election of remedies defense in its answer, it raised the defense in the pretrial order by listing "whether plaintiff's remedy is [ ] factually consistent with its other Counts" as a legal issue under each of plaintiff's claims." (See Pretrial Order (DE 610) 13-17). Accordingly, defendant has preserved the defense. See Rockwell Int'l Corp. v. United States, 549 U.S. 457, 474 (2007) ("[T]he inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim.").

Having found that defendant preserved this defense, the court turns to defendant's arguments in the main. In so doing, it must be noted that plaintiff's proposed form of judgment, (DE 657), filed after defendant moved for election of remedies, renders many of defendant's arguments moot. Specifically, defendant's argument that plaintiff must elect a particular cause of action to recover damages is mooted by plaintiff's election to recover damages on its unfair and deceptive trade practices claim. Moreover, defendant's argument that cancellation of trademark

registrations due to naked licensing is inconsistent with plaintiff's other remedies is mooted by the fact that plaintiff is no longer pursuing trademark cancellation on the basis of naked licensing.

With regard to issues remaining for decision, defendant argues, among other things, that plaintiff cannot recover monetary damages under its unfair and deceptive trade practices claim and also obtain cancellation of the WINGS registrations based on fraud because those remedies amount to a double recovery. Because the jury awarded the same amount of damages on each of plaintiff's claims, defendant urges that plaintiff would have suffered the same damage regardless of whether defendant fraudulently obtained the WINGS registrations. It contends that cancellation of a trademark registration is inappropriate if the plaintiff would have suffered the same damages irrespective of the alleged fraudulently procured trademark registration, exclusively relying on an unpublished district court case arising from the District of New Jersey, Fenwick v. Dukhman, No. CIV.A. 13-4359 CCC, 2015 WL 1307382, at *8 (D.N.J. Mar. 20, 2015).

Fenwick, however, is inapposite. It did not concern a post-trial election of remedies defense but rather a motion to dismiss for lack of standing at the pleadings stage. There, the court dismissed plaintiff's trademark cancellation claim because plaintiff's damages "would exist wholly independent of Defendants' allegedly false registration", and therefore, plaintiff did not have standing to assert the trademark cancellation claim. Fenwick, 2015 WL 1307382, *7.

Even assuming that defendant's contention is correct, and plaintiff failed to show the independent harm necessary to assert a claim for trademark cancellation, the appropriate course of action would not be to require plaintiff to elect its remedies, and possibly elect to obtain trademark cancellation. Rather, the appropriate course of action would be to bar plaintiff's recovery on its trademark cancellation claim. See e.g., Campbell v. Bos. Sci. Corp., 882 F.3d 70, 79 (4th Cir. 2018) (citing Cavazos v. Smith, 565 U.S. 1, 2 (2011)) ("A reviewing court may set aside

4

the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.). Where a motion to elect remedies is not the proper vehicle for this argument, defendant's motion is denied in this part, without prejudice to defendant reasserting this argument in the context of any post-judgment motion.

Defendant also argues that plaintiff cannot obtain cancellation of defendant's WINGS registrations and a declaratory judgment that defendant's WINGS registrations are held in a constructive trust for plaintiff because these remedies are inconsistent. To avoid this inconsistency, plaintiff now seeks the court to "rectify the register", pursuant to 15 U.S.C. § 1119, instead of cancelling defendant's WINGS registrations. Plaintiff did not, however, request that the court rectify the register in its amended complaint or include this relief in the pretrial order; rather, plaintiff consistently sought the remedy of trademark cancellation. (See Am. Compl. (DE 184) ¶ 73; Pretrial Order (DE 610) ¶ II(3)(m)). Plaintiff even requested a jury instruction on trademark cancellation, (see Prop. Jury Instr. (DE 604) at 50-51), and the court so instructed the jury. (See Jury Instr. (DE 643) at 28).

Plaintiff cannot circumvent defendant's preserved election of remedies defense by requesting relief that it neither pleaded nor included in the pretrial order. See Rockwell Int'l, 549 U.S. at 474; see also Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 206 (5th Cir. 1998) ("In the Joint Pre–Trial Order signed by the parties' counsel, [plaintiff's] demand for an accounting of profits is not mentioned . . . the Lanham Act . . . provides for the remedy of an accounting of profits and lists it separately from damages. Therefore, [plaintiff's] listing of injunctive relief, damages, and attorneys' fees under the Lanham Act in the Joint Pre–Trial Order does not act to preserve its claim for an accounting of profits, and the issue therefore was waived.").

5

Plaintiff also argues a constructive trust remedy is not inconsistent with its trademark cancellation remedy because plaintiff "does not seek a forward looking 'trust' to govern the conduct of [defendant's] fraudulently-obtained trademark registrations in the future"; instead plaintiff seeks a "declaration that all rights to WINGS superficially held in the past in the name of [defendant] are and have been subject to a constructive trust." (Mem. (DE 656) at 7-8).

However, to the extent a constructive trust is a retrospective remedy, it would amount to a double recovery, since plaintiff is receiving damages for defendants' past conduct related to the parties' 2005 agreement and defendant's 2006 and 2011 trademark applications. See Sec. Nat. Bank of Greensboro v. Educators Mut. Life Ins. Co., 265 N.C. 86, 95 (1965) (emphasis added) ("A constructive trust does not arise where there is no fiduciary relationship and there is an adequate remedy at law."); see also Berman v. Johnson, 315 F. App'x 461, 463 (4th Cir. 2009) ("[T]he jury, in finding a breach of contract and awarding damages, compensated [plaintiff] for all losses flowing from the breach. A declaration granting [plaintiff] the promotion and distribution rights, which had already been taken into account in the jury's damages award to him, would therefore amount to a double recovery.").

For all these reasons, defendant's WINGS registrations are cancelled. However, requests relating to imposition of a constructive trust and/or direction being provided by the court to the Director of the United States Patent and Trademark Office to rectify the register must be denied.

B.  Unfair and Deceptive Trade Practices

Plaintiff has elected to recover damages under its unfair and deceptive trade practices claim. North Carolina's Unfair and Deceptive Trade Practices Act declares as unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

In order to prevail on a claim for unfair trade practices, a plaintiff must show: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001). "The determination of whether an act or practice is an unfair or deceptive practice that violates [N.C. Gen. Stat.] § 75-1.1 is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000); see S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese, 284 F.3d 518, 534 (4th Cir. 2002) (citations omitted) ("[O]ccurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court."). "[A] practice is deceptive if it has the tendency to deceive." Marshall v. Miller, 302 N.C. 539, 548 (1981) (citation omitted). Moreover, "a practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Gray, 352 N.C. at 68 (citation omitted).

The jury found that defendant "made false statements and/or misrepresentations" in soliciting and negotiating plaintiff's execution of the parties' 2005 agreement, and in connection with its 2006 and 2011 trademark applications. (See Verdict (DE 645) ¶ 9). Misrepresentations constitute unfair or deceptive conduct. Bumpers v. Cmty. Bank of N. Virginia, 367 N.C. 81, 88 (2013) (recognizing misrepresentations as unfair or deceptive conduct); see Riese, 284 F.3d at 541 ("As a rule, misrepresentations, even negligent misrepresentations, are sufficient for an act to qualify as an unfair or deceptive trade practice."); see also Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 729 (M.D.N.C. 2015) (citations omitted) ("[I]t is plain that intentional misrepresentations are per se violations of section 75–1.1 because fraud is, by

7

definition, unfair and deceptive."). Therefore, defendant's conduct, as found by the jury, constitutes unfair and deceptive conduct as a matter of law.

Defendant argues, however, that any misrepresentation it made while negotiating the parties' 2005 agreement cannot constitute unfair and deceptive trade practices because plaintiff and defendant are sophisticated parties who were represented by counsel for purposes of that transaction. This argument is unpersuasive, where it contradicts the jury's finding that plaintiff justifiably relied on defendant's misrepresentation. (See Verdict (DE 645) ¶ 4).

Defendant's argument also rests upon the jury's finding that defendant made false statements "and/or" misrepresentations. (See Verdict (DE 645) at ¶ 9) (emphasis added). According to defendant, false statements do not constitute unfair and deceptive trade practices. However, the jury also found that defendant fraudulently induced plaintiff to enter into the parties' 2005 agreement and that defendant made a false representation of material fact with an intent to deceive to the United States Patent and Trademark Office in 2006 and 2011, resulting in issuance of trademark registrations. (See Verdict (DE 645) at ¶¶ 1, 6). Importantly, "[p]roof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." Bhatti v. Buckland, 328 N.C. 240, 243 (1991) (citing Hardy v. Toler, 288 N.C. 303, 309 (1975)). Therefore, these acts constitute unfair and deceptive trade practices.

Finally, defendant argues its conduct in connection with the 2006 and 2011 trademark applications amounts to a mere breach of its agreement with Shepard Morrow, and breach of contract does not rise to the level of unfair and deceptive trade practices. However, separate and apart from any implications its conduct had on its agreement with Shepard Morrow, this conduct also formed the basis of plaintiff's fraudulent registration claims, which claims the jury found

8

plaintiff proved at trial. And as stated above, proof of fraud constitutes unfair and deceptive trade practices.

Having found the defendant's conduct constitutes unfair and deceptive trade practices, the court turns to damages. The jury awarded plaintiff $4,184,135.00 on this claim. Once a violation of North Carolina General Statute § 75–1.1 is shown automatic assessment of treble damages is mandated by this statute. Marshall, 302 N.C. at 547; see Bhatti, 328 N.C. at 243 (citation omitted) ("If a violation of Chapter 75 is found, treble damages must be awarded."). The sum of $12,552,405.00 must be awarded then, in this instance.

C. Defendant's Motion for Declaratory Judgment (DE 658)

Defendant moves for judgment declaring that plaintiff acquired no rights in the WINGS mark, as a result of the assignment from Shepard Morrow, because Shepard Morrow abandoned his rights in the WINGS mark by engaging in naked licensing and because Shepard Morrow's registrations were cancelled between 1995 to 2006.

"'Naked licensing' occurs when the licensor fails to exercise adequate quality control over the licensee." Beach Mart, Inc. v. L&L Wings, Inc., 784 F. App'x 118, 127 (4th. Cir. 2019) (citing FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 515 (9th Cir. 2010)). This practice "may cause the trademark to stop functioning as a symbol of quality and a controlled source." Id. Accordingly, "[i]n such a case, the court may find that the trademark has been abandoned and that cancellation of the trademark's registration is appropriate." Id. (first citing Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc., 289 F.3d 589, 598 (9th Cir. 2002); then Restatement (Third) of Unfair Competition § 33 (Am. Law Inst. 1995); 15 U.S.C. § 1064(3); and then 15 U.S.C. § 1119). However, naked licensing does not occur where the license contains "an express contractual right to inspect and supervise the licensee's operations." FreecycleSunnyvale, 626 F.3d at 516. Here,

the license agreement between Shepard Morrow and defendant states: "Licensor shall have the right to monitor and inspect the quality of the Licensed Services at all of Licensee's stores from time to time in its sole discretion." (License (DE 325-1) at 3). In light of this express contractual right, Shepard Morrow did not engage in naked licensing.

Moreover, at trial, the jury found that the agreement under which Shepard Morrow licensed rights in the WINGS mark to defendant did not terminate. (See Verdict (DE 64) ¶ 15). Importantly, "a licensee is estopped to contest the validity of the licensor's title during the course of the licensing arrangement, because a licensee may not enjoy the use of the licensed mark while at the same time challenging the mark as being invalid." Beach Mart, Inc., 784 F. App'x at 127 (first citing Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co., 514 F.2d 665, 671 (5th Cir. 1975); then 3 McCarthy on Trademarks & Unfair Competition § 18.63 (5th ed. June 2019 update); then John C. Flood of Va., Inc. v. John C. Flood, Inc., 642 F.3d 1105, 1110-11 (D.C. Cir. 2011); and then Creative Gifts, Inc. v. UFO, 235 F.3d 540, 548 (10th Cir. 2000)). Thus, where defendant is a licensee under its agreement with Shepard Morrow, it cannot challenge the validity of Shepard Morrow's rights in the WINGS mark on naked licensing grounds or otherwise.

Defendant also seeks judgment declaring that plaintiff acquired no rights in the WINGS mark, as a result of the assignment from Shepard Morrow, because the assignment transferred no tangible assets or goodwill to plaintiff. As relevant here, "[a] mark may be transferred only in connection with the transfer of the goodwill of which it is a part. A naked transfer of the mark alone—known as a transfer in gross—is invalid." Visa, U.S.A., Inc. v. Birmingham Tr. Nat. Bank, 696 F.2d 1371, 1375 (Fed. Cir. 1982). "A valid transfer of a mark, however, does not require the transfer of any physical or tangible assets. All that is necessary is the transfer of the goodwill to which the mark pertains." Id. (citations omitted). Moreover, "the transfer of goodwill requires

only that the services be sufficiently similar to prevent consumers of the service offered under the mark from being misled from established associations with the mark." Id. at 1376 (citations omitted). Here, the services offered by plaintiff—the sale of beachwear items—are sufficiently similar to the established associations with the mark, as defendant also used the mark for the sale of beachwear items as Shepard Morrow's licensee. Therefore, the assignment from Shepard Morrow to plaintiff involved the requisite transfer of goodwill.

Next, defendant argues the assignment from Shepard Morrow to plaintiff as not valid because Shepard Morrow did not provide defendant with notice of the assignment, as required by the license agreement between Shepard Morrow and defendant. As relevant here, the license agreement between Shepard Morrow and defendant states:

> Licensor, upon written notice to Licensee, may assign all or any part of its rights or duties under this Agreement. Subject to the foregoing restrictions, all rights, duties and obligations of the parties under this Agreement shall bind and inure to the benefit of the parties' respective successors and assigns.

(License (DE 325-1) at 6). Shepard Morrow assigned his rights under the license agreement to plaintiff on April 18, 2014. (See Assignment (325-2) at 5). As defense counsel recognized at hearing, defendant received notice of the assignment "late in the afternoon" on April 18, 2014. (See Letter (DE 222-6) at 2). Defendant argues such notice was ineffective because it occurred after the assignment took place. However, where the license agreement does not specify the order in which assignment and notice must occur, (see License (DE 325-1) at 6), and where notice and assignment both occurred on April 18, 2014, any purported "lack of notice" does not provide a basis to deem the assignment from Shepard Morrow to plaintiff invalid.

Defendant also argues that that even assuming the assignment was valid, plaintiff abandoned any rights it may have received from Shepard Morrow due to naked licensing because it did not engage in quality control of defendant's use of the WINGS mark. This argument is

11

unpersuasive. Under the assignment agreement, Shepard Morrow assigned to plaintiff all of Shepard Morrow's rights and interests under its 1993 license agreement with defendant, (see Assignment (DE 325-2) at 2), including the express contractual right to inspect and supervise defendant's operations. (See License (DE 325-1) at 3). This express contract right precludes a finding of naked licensing. See FreecycleSunnyvale, 626 F.3d at 516.

For all these reasons, defendant is not entitled to judgment declaring that plaintiff lacks rights in the WINGS mark. Defendant's motion for declaratory judgment is denied.

D. Judgment

In this long-lasting dispute, the question whether plaintiff is entitled to prejudgment interest must be carefully considered. Plaintiff seeks prejudgment interest on compensatory damages in an amount determined by the rate established by N.C. Gen. Stat. § 24-1, as of September 9, 2011, the date on which complaint was filed, until date of entry of judgment. See Prop. Judgment (DE 657) ¶ 11.

North Carolina General Statute § 24-5(b) provides "[i]n an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied . . . Interest on an award in an action other than contract shall be at the legal rate." N.C. Gen. Stat. § 24-5(b). Since the instant action is "an action other than contract", under the plain language of North Carolina General Statute § 24-5(b), plaintiff's compensatory damages "bears interest from the date the action is commenced." See State v. Davis, 364 N.C. 297, 302, (2010) (quotation omitted) ("Courts must give an unambiguous statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein."). This finding is consistent with other cases allowing prejudgment interest under North Carolina General Statute § 24-5(b).

12

See Brown v. Flowe, 349 N.C. 520, 523 (1998) (emphasis in original) ("There is no indication in [N.C. Gen. Stat. § 24-5(b)] that the compensatory portion minus settlements bears interest; rather, the statute says simply that the 'compensatory damages' portion of the judgment bears interest. The statutory language is clear, and this Court therefore must not engage in judicial construction."); Castles Auto & Truck Serv., Inc. v. Exxon Corp., 16 F. App'x 163, 168 (4th Cir. 2001) ("Although Exxon inexplicably maintains that § 24–5(b) is discretionary, we conclude that the statute is unambiguously mandatory."); Hamby v. Williams, 196 N.C. App. 733, 738 (2009) ("We hold [N.C. Gen. Stat. § 24-5(b)] to be mandatory and not discretionary on the part of the trial court, and that the trial court erred in not awarding prejudgment interest to plaintiff.").

Defendant argues that the damages presented at trial were speculative. It relies upon Lazenby v. Godwin, 60 N.C. App. 504 (1983), for the proposition that prejudgment interest is not recoverable on damages that are neither liquidated nor readily ascertainable. Defendant's argument is unpersuasive for multiple reasons.

First, the statute does limit prejudgment interest to liquidated or readily ascertainable damages, and this court is "without power to interpolate, or superimpose, provisions and limitations not contained therein." Davis, 364 N.C. at 302. Second, defendant's reliance on Lazenby, a case decided in 1983, is unavailing because it fails to take into account subsequent amendments to North Carolina General Statute § 24-5. At the time Lazenby was decided, North Carolina General Statute § 24–5(a) "provided that [a]ll sums of money due by contract of any kind shall bear interest" but "[t]he statute did not address the date from which the courts were to apply interest." Metromont Materials Corp. v. R.B.R. & S.T., 120 N.C. App. 616, 617–18 (1995). In lack of statutory guidance, North Carolina courts interpreting North Carolina General Statute § 24-5 allowed interest from the date of breach only if the amount of damages could be "ascertained

13

from the contract itself, or from relevant evidence, or from both." Gen. Metals, Inc. v. Truitt Mfg. Co., 259 N.C. 709, 713, (1963); see Gerber Prod. Co. v. Fisher Tank Co., 833 F.2d 505, 509 (4th Cir. 1987) ("In its earlier form, the North Carolina statute authorized imposition of prejudgment interest only when, at the time of breach, the defendant could have determined the amount of the damages with some certainty and thus have had an opportunity to foreclose litigation by payment."); see also Steelcase, Inc. v. Lilly Co., 93 N.C. App. 697, 703 (1989) ("In breach of contract cases decided prior to the 1985 amendment of G.S. § 24–5 interest was allowed from the date of breach under certain circumstances."). Moreover, regarding actions "other than contract", § 24-5 stated in relevant part:

> The portion of all money judgments designated by the fact finder as compensatory damages in actions other than contract shall bear interest from the time the action is instituted until the judgment is paid and satisfied, and the judgment and decree of the court shall be rendered accordingly. <u>The preceding sentence shall apply only to claims covered by liability insurance</u>.

1981 N.C. Sess. Laws 369, 369–70 (emphasis added).

However, in 1985 the North Carolina General Assembly made two significant amendments to North Carolina General Statute § 24-5. First, "[i]n 1985, N.C.G.S. § 24–5(b) was amended to remove the distinction between noncontract judgments covered by liability insurance and those not covered by liability insurance." Custom Molders, Inc. v. Am. Yard Prod., Inc., 342 N.C. 133, 136 (1995). In consequence, "[u]nder the 1985 amendment, the compensatory damages earn interest from the date the action is instituted whether or not such damages are covered by liability insurance." Id. at 137. Second, the 1985 amendment established that, in contract actions, prejudgment interest accrues as the time of breach, regardless of whether those damages were ascertainable at the time of breach. See Gerber Prod., 833 F.2d at 509; see also Metromont Materials, 120 N.C. App. at 618 (emphasis added) ("When the legislature amended the statute, and

14

provided a time from which to apply interest . . . it removed the confusing questions of ascertainment and certainly that so often muddled the statute's application.").

Accordingly, in light of post-Lazenby amendments to North Carolina General Statute § 24-5, which broadened the statute's applicability by allowing prejudgment interest on contract damages, regardless of whether the damages were ascertainable at the time of breach, and allowing prejudgment interest in actions other than contract, regardless of whether the claims were covered by liability insurance, defendant's reliance on Lazenby is unpersuasive. Indeed, twelve years after it decided Lazenby, the North Carolina Court of Appeals rejected the argument defendant makes now. See Metromont Materials,120 N.C. App. at 617 ("[Plaintiff] first argues that the trial court erred in awarding prejudgment interest because '[a]s a general rule the North Carolina Courts do not recognize the granting of prejudgment interest on unliquidated damages or those which are not readily ascertainable.' We disagree. . . it is clear to this Court that resort to that rule, developed only to determine the date from which to apply interest, is no longer necessary.").

Defendant also argues plaintiff is not entitled to prejudgment interest because plaintiff did not submit this issue to the jury, relying on cases that hold prejudgment interest is a jury question under Georgia and Virginia law. Here, however, plaintiff's request for prejudgment interest is grounded in North Carolina law, not Georgia or Virginia law. Under North Carolina law, the trial court assesses prejudgment interest. See Flowe, 349 N.C. at 523 ("The jury found $250,000 to be damages . . . the estate of Mary Louise Brown, Vickie Brown, Administratrix, was entitled to recover by reason of the injury to and death of Mary Louise Brown. Therefore, the trial court properly calculated interest, from the date the action was instituted, on $250,000, the portion of the judgment which the jury found to be compensatory damages."). Here, where the jury awarded

15

plaintiff $4,184,135.00, in compensatory damages, (see Verdict (DE 645)), the court must assess prejudgment interest.

Having determined that plaintiff is entitled to prejudgment interest, the court must determine the date on which interest begins to accrue. According to plaintiff, prejudgment interest accrued September 9, 2011, the date on which plaintiff commenced this action. In contrast, defendant argues prejudgment interest cannot accrue before December 16, 2013, the date plaintiff amended its complaint to assert the unfair and deceptive trade practices claim on which its damages are based.

As discussed herein, "[c]ourts must give an unambiguous statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." Davis, 364 N.C. at 302; see In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir. 2004) (It is "a settled principle, unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language."). Here, North Carolina General Statute § 24-5(b) unambiguously provides that prejudgment interest begins to accrue "on the date the action is commenced." N.C. Gen. Stat § 24-5(b). Moreover, "[a] civil action is commenced by filing a complaint with the court." N.C. Gen. Stat. § 1A–1, Rule 3. Thus, under the plain language of North Carolina General Statute § 24-5(b), prejudgment interest began to accrue on September 9, 2011, the date plaintiff commenced this action by filing complaint. Defendant does not cite, nor is the court aware of, any North Carolina case holding that prejudgment interest accrues from the date the amended complaint is filed. Cf. Harris v. Scotland Neck Rescue Squad, Inc., 75 N.C. App. 444, 452 (1985) (rejecting argument that prejudgment interest begins to accrue when defendant receives notice of the action through service, in light of statutory command that prejudgment interest accrues when the action is commenced).

16

For all these reasons, plaintiff shall recover prejudgment interest accruing as of September 9, 2011, at the legal rate of eight percent (8%) per annum, in accordance with North Carolina General Statutes §§ 24-1 and 24-5(b).

## CONCLUSION

Based on the foregoing, defendant's motion to require plaintiff to elect its remedies (DE 651) is GRANTED IN PART and DENIED IN PART. Defendant's motion for declaratory judgment (DE 658) is DENIED. Pursuant to Federal Rule of Civil Procedure 58(b)(2), upon return of jury verdict, and in accordance with decisions herein rendered, the clerk is DIRECTED to enter judgment, in the instant matter and in case No. 2:14-CV-52-FL, in the form that follows.

SO ORDERED, this the 26th day of March, 2021.

*/s/ Louise W. Flanagan*
_____
LOUISE W. FLANAGAN
United States District Judge

# APPROVED FORM OF JUDGMENT

**DECISION BY THE COURT.**

It is **ORDERED, ADJUDGED AND DECREED** that for the reasons detailed in the Court's October 3, 2014, Order, that L&L Wings, Inc.'s claims for trademark infringement under 28 U.S.C. § 1114 and 15 U.S.C. § 1125(a) are dismissed with prejudice.

It is further **ORDERED, ADJUDGED AND DECREED** that for the reasons detailed in the Court's October 3, 2014 and March 29, 2018 Orders, sanctions in the amount of $107,436.25 in attorney's fees and $11,318.83 in costs are awarded against L&L Wings, Inc., in favor of Beach Mart, Inc.

**JURY VERDICT**. The remaining claims in this action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

**IT IS ORDERED, ADJUDGED AND DECREED** that Beach Mart, Inc. has proven by the preponderance of the evidence that L&L Wings, Inc. fraudulently induced Beach Mart, Inc. to enter into the parties' August 29, 2005, agreement, and L&L Wings, Inc. negligently misrepresented information in connection with the parties' August 29, 2005, agreement, upon which Beach Mart, Inc. justifiably relied, thereby causing damage to Beach Mart, Inc.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Beach Mart, Inc. has proven by clear and convincing evidence that L&L Wings, Inc. knowingly made false representations of material fact with an intent to deceive to the United States Patent and Trademark Office in 2006, 2007, and/or 2008, resulting in the issuance of federal trademark Registration No. 3,458,144 (the " '144 Registration"), and in 2011, resulting in the issuance of federal trademark Registration No. 4,193,881 (the " '881 Registration"), thereby causing injury to Beach Mart, Inc.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Beach Mart, Inc. has proven by the preponderance of the evidence that L&L Wings, Inc. made false statements and/or misrepresentations in connection with the solicitation and negotiation of the August 29, 2005, agreement with Beach Mart, Inc., and L&L Wings, Inc. made false statements and/or misrepresentations in connection with the 2006 application leading to the '144 Registration and the 2011 application leading to the '881 Registration, in or affecting commerce, thereby causing damages to Beach Mart, Inc. The Court finds that the foregoing acts of L&L Wings, Inc. constitute unfair and deceptive conduct, as prohibited under N.C. GEN. STAT. § 75-1.1, and Beach Mart, Inc. is entitled to recover all of its damages arising therefrom.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Beach Mart, Inc. is entitled to compensatory damages arising from the foregoing in the amount of $4,184,135.00, and that such compensatory damages shall be trebled pursuant to N.C. GEN. STAT. § 75-16 such that Beach Mart, Inc. is entitled to recover of L&L Wings, Inc. in the amount of $12,552,405.00.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Beach Mart, Inc. has proven by the preponderance of the evidence that all right, title, and interest in and to the WINGS trademark for use in connection with retail clothing stores was owned by Shepard R. Morrow in April of 1993 when L&L Wings, Inc. and Shepard R. Morrow entered into the April 29, 1993, license agreement for the use by L&L Wings, Inc. of the WINGS mark.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Beach Mart, Inc. has proven by the preponderance of the evidence that the April 29, 1993, trademark license between Shepard R. Morrow and L&L Wings, Inc. (the "Morrow License") remains in effect and has not terminated.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that because Beach Mart, Inc. has proven by clear and convincing evidence that L&L Wings, Inc. knowingly made false representations of material fact with an intent to deceive to the United States Patent and Trademark Office in 2006, 2007, and/or 2008, resulting in the issuance of federal trademark Registration No. 3,458,144, and in 2011, resulting in the issuance of federal trademark Registration No. 4,193,881, thereby causing injury to Beach Mart, Inc., it is hereby **ORDERED AND DECREED** pursuant to 15 U.S.C. § 1119 that:

1) the Clerk of Court is hereby directed to send a certified copy of this Judgment, within 14 days of the date hereof, to the Director of the United States Patent and Trademark Office, Office of the Solicitor, Mail Stop 8, P.O. Box 1450, Alexandria, Virginia 22313-1450.

2) the Director of the United States Patent and Trademark Office is directed to cancel Registration No. 3,458,144 for WINGS and Registration No. 4,193,881 for WINGS;

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Beach Mart, Inc. has proven by the preponderance of the evidence that Beach Mart, Inc. has all right, title and interest in and to its SUPER WINGS trademark arising from use for retail store services in North Carolina as of January 1, 2006.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the claims for declaratory judgment of L&L Wings, Inc. and Beach Mart, Inc., to the extent not otherwise addressed herein, are hereby dismissed with prejudice.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Beach Mart, Inc. shall recover pre-judgment interest, accruing from September 9, 2011, up to and until date of entry of judgment at the rate of eight percent (8%) per annum on the sum of $4,184,135.00. for a total amount of $_____. Beach Mart, Inc. is entitled to and shall recover post-judgment interest on the entire amount awarded under this judgment, in an amount determined by the rate established by 28 U.S.C. § 1961, accruing as of the date of entry of judgment up to and until satisfaction in full.

19

Case 2:11-cv-00044-FL   Document 687   Filed 03/26/21   Page 19 of 19